341 So.2d 926 (1976)
Joe REED
v.
The CITY OF MONTGOMERY, a Municipal Corporation, et al.
SC 1662.
Supreme Court of Alabama.
December 30, 1976.
Gray, Seay & Langford, Montgomery, for appellant.
*927 Walter J. Knabe and Randall C. Morgan, Montgomery, for appellees.

On Rehearing
BLOODWORTH, Justice.
The application for rehearing is granted and the original opinion in this cause is withdrawn and this opinion substituted for it.
This is an appeal from a judgment upholding the validity of a resolution which was passed by the Montgomery City Council. We consider the issues involved to be: First, must a resolution which is passed at the meeting at which it is introduced receive a unanimous vote for passage or is it sufficient that it receive unanimous consent for consideration? Second, was unanimous consent for consideration given?

I.
We hold that the following language from Alabama Act No. 618, § 3.15 (1973), means that no "ordinance of permanent operation" shall be passed at the meeting of the Montgomery City Council at which it was introduced unless unanimous consent has been given to take up the measure:
". . . No ordinance of permanent operation shall be passed at the meeting at which it was introduced except by unanimous consent of all members of the council present, and such unanimous consent shall be shown by the yea and nay votes entered upon the minutes of said meeting . . ."
A. "Unanimous consent" to take up measure does not mean "unanimous vote" for passage.
When taken in its context, the language quoted above clearly means that unanimous consent must be given to consideration for passage, not to passage itself. The remainder of the sentence quoted above says,
". . . [P]rovided, however, that if all members of the council present vote for the passage of the ordinance and their names are so entered of record as voting in favor thereof, it shall be construed as giving unanimous consent to the action upon such ordinance at the meeting which it is introduced. . ."
This provision of § 3.15 does not change the rule stated elsewhere in § 3.15 that
". . . the affirmative vote of a majority of those members present, shall be sufficient for the passage of any resolution, by-law, or ordinance . . ."
The utter fallacy of the dissent's interpretation can readily be seen by restating the proviso quoted above and construing "unanimous consent" to mean "unanimous vote" as the dissent does:
". . . if all members of the council present vote for passage of the ordinance. . ., it shall be construed as a unanimous vote in favor of passage of the ordinance. . . ."
The dissent would have us believe that the legislature took this roundabout means to tell us that a unanimous vote should be construed as a unanimous vote!
The proviso makes sense only if it is read to say that unanimous consent to take "action upon such ordinance at the meeting at which it is introduced" is not required when the ordinance has been passed by a unanimous vote at that meeting. If the intent of the legislature was to distinguish between a voice vote and a formal roll-call vote (as the dissenters contend), the legislature would certainly have simply said so!
B. Resolution No. 678-75 was not an "ordinance of permanent operation."
There is yet another reason why the dissenters are in error. Assuming, for the sake of argument, that § 3.15 does require unanimous vote, the provisions of § 3.15 can apply only to "ordinances of permanent operation." The dissenting opinion treats the term "ordinances of permanent operation" as if it includes all ordinances and resolutions. That conclusion is just plainly incorrect!
Three terms, "ordinances," "resolutions," and "by-laws," are used in § 3.15, clearly indicating that the legislature recognized a distinction. When the legislature *928 uses distinctive terms, it is not the province of this Court to ignore the distinctions simply because honoring them may create some difficulties.
Indeed, this Court has in previous cases honored the distinction between "ordinances of permanent operation" and other kinds of action which a city council might take.
In City of Prichard v. Moulton, 277 Ala. 231, 238, 168 So.2d 602, 609 (1964), this Court defined "ordinances of permanent operation" and distinguished them from ordinances and resolutions not of permanent operation:
"Ordinances or resolutions of permanent operation are those which continue in force until repealed. An ordinance providing for the creation of city offices such as a treasurer, tax collector, or clerk, is an example of an ordinance of a permanent nature. Michael v. State, 163 Ala. 425, 50 So. 929. In Pierce v. City of Huntsville, 185 Ala. 490, 64 So. 301, it was held that ordinances and resolutions relating to the calling for and acceptance of bids and fixing assessments, for paving of certain streets were not ordinances or resolutions of a permanent nature.. . ."
In Moulton, this Court held that a resolution authorizing an agreement for the preparation of plans and estimates for a garbage disposal plant and a subsequent ordinance accepting those plans were not ordinances or resolutions of permanent operation.
Resolution No. 678-75, the resolution in question in the case at bar, approved a program for the construction of sewers in certain locations, for paving, and for other civic improvements and authorized the Mayor to apply to the federal government for a grant to finance the program. There is no significant difference between this resolution and the resolution in Moulton. Nevertheless, the dissent erroneously treats Resolution No. 678-75 as "an ordinance of permanent operation." The dissent makes no attempt to explain how this resolution is "an ordinance of permanent operation." In fact, the dissent ignores the distinction between "ordinances of permanent operation" and other ordinances and resolutions.

II.
We hold that the trial judge was correct in holding that "unanimous consent" to take up the resolution was given.
Although § 3.15 requires unanimous consent for consideration only of "ordinances of permanent operation" which are passed at the meeting at which they are first introduced, Montgomery Ordinance No. 77-75, § 17, sets forth a similar requirement for all ordinances and resolutions:
"All Ordinances and Resolutions submitted to the Council shall lie over until the next regular meeting; provided, that such Ordinances, or Resolutions may be considered earlier by unanimous consent of the Council; and provided further, that this rule shall not apply to the current expenses of or contracts previously made with, or regular salaries of officers of, or wages of employees of the City."
The issue here is therefore whether there was unanimous consent to consideration of Resolution No. 678-75 at the November 25 meeting. In addition to holding that a unanimous vote is required, the dissent argues that there was no unanimous consent for consideration at the November 25 meeting.
The dissenters say the minutes do not reflect such unanimous consent was given. Our answer is the minutes do not reflect that unanimous consent was not given. The minutes appear to be silent on this issue. We don't think you can imply from a silent record that no consent was given particularly in view of evidence presented by witnesses before the trial judge, and his finding, to the contrary.
The City claimed, and the trial court found, that the Council's unanimous approval of the resolution of October 28, when considered in pari material with intervening events culminating in Resolution No. 678-75, constituted unanimous consent as required by § 17. The court alternatively *929 found that Mr. Reed had withdrawn his objection to consideration of Resolution No. 678-75 when he learned that the November 25 meeting was the last meeting at which the resolution could be considered.
In reviewing this case, this Court is bound by the rule limiting the scope of review of orders granting and denying injunctive relief. The power of a trial court to grant or refuse injunctive relief rests in the sound discretion of the trial judge, under the facts and circumstances of the particular case. Odess v. Taylor, 282 Ala. 389, 211 So.2d 805 (1968). To establish an abuse of discretion, it must be shown that the trial court committed a clear or palpable error. Ex parte Jones, 246 Ala. 433, 20 So.2d 859 (1945). In order to decide whether the trial judge abused his discretion in this case, we must examine the testimony which was presented to him to determine whether the evidence justified denying Mr. Reed's request for an injunction.
Mr. Reed's first witness, City Clerk Alex R. Garrett, testified that, although Resolution No. 678-75 had not actually been introduced in any Council meeting prior to November 25, the subject matter had been introduced on October 28, through Resolution No. 616-75. Resolution No. 616-75, which was unanimously passed by the Council, reads:
"WHEREAS, Public Law 93-383 requires public meetings be held prior to the submission of Community Development Block Grant Applications, and that such meetings be advertised at least 15 days before the public meetings; and
"WHEREAS, neighborhood public hearings have been held as required by public law:
"NOW, THEREFORE, BE IT RESOLVED THAT THE CITY COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, will hold a public hearing on November 18, 1975, to receive Community Development Program recommendations from the Citizens' Participation Group, and will approve the final Community Development Block Grant Programs on November 25, 1975;

"BE IT FURTHER RESOLVED BY THE CITY COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that the advertisement for public hearings shall be placed in newspapers by the Planning and Development Department no later than Sunday, November 2, 1975." [Emphasis supplied.]
The dissenting opinion completely ignores that part of this resolution which provided for final approval of the Community Development Block Grant Programs on November 25, 1975. All members of the City Council voted in favor of this resolution, knowing that approval of the final programs would necessitate passage of the resolution at the meeting at which it would be first introduced. Now, some of them seek an injunction against following the schedule which they voted for, and the dissenters, for some reason not supported by their opinion, say they should have been granted the injunction.
The minutes of the November 18 meeting indicate that the City Council followed Resolution No. 616-75 of October 28 when they reassembled to receive the recommendations of the Citizens' Participation Group for the 1975-76 Community Development Program for Montgomery and to conduct a public hearing on those recommendations. Similarly, by considering Resolution No. 678-75, the subject of this litigation, the Council complied with the October 28 Resolution to "approve the final Community Development Block Grant Program" on November 25.
From this evidence, the trial judge concluded that Resolution No. 616-75 of October 28 established a schedule by which the Community Development Program would be adopted. That schedule was followed in the November 18 and the November 25 meetings. From this conclusion, the trial judge ruled that the unanimous consent for consideration of the budget on November 25 was actually given on October 28 when the Council agreed to adopt a budget on the later date; therefore, the trial judge denied Reed's request for injunctive relief.
*930 Applying our rule for reviewing orders denying injunctive relief, we must find that the trial judge's conclusion and ruling were not an unreasonable application of the evidence before him. We hold, therefore, that he did not abuse his discretion in denying the injunction.
Moreover, the record contains sufficient evidence to support the trial judge's conclusion that Mr. Reed had withdrawn any objection to consideration of the resolution before the final vote was held. The evidence is found in the testimony of the City Council President, Emory Folmar. Mr. Folmar stated that Mr. Reed asked if it was necessary to act on the resolution on November 25. In response to Mr. Reed's question, Mr. Arenstein [sic], head of the Planning and Development Department, told the Council that it was necessary to act upon the resolution that evening because of the public hearing and advertising regulations of Housing and Urban Development. If the Council delayed action, Mr. Arenstein reported, the final vote could probably not be held during the 1975 fiscal year, in which case Montgomery stood a chance to lose the federal grant. Following Mr. Arenstein's report, Mr. Folmar stated that no further objection was presented to the consideration of the resolution.
The testimony also indicated that, before the final vote, Mr. Reed participated in the debate on Resolution No. 678-75 and Mr. Folmar made a ruling, which was sustained by the Council, that there had been no objection to consideration of the resolution.
Although Mr. Folmar's testimony is challenged by Mr. Reed's own account of his objection, it was within the trial judge's discretion to find in favor of Mr. Folmar's version. Because the trial judge based his denial of injunctive relief upon credible and competent evidence before him, he did not exceed his discretionary authority. Therefore, this Court should not disturb his order on this review but should affirm this cause.
APPLICATION FOR REHEARING GRANTED.
AFFIRMED.
MADDOX, ALMON, EMBRY and BEATTY, JJ., concur.
HEFLIN, C. J., and FAULKNER, JONES and SHORES, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent.
This case involves the validity of a resolution which was passed by the Montgomery City Council. The issues involved are twofold. First, must a resolution which is passed at the meeting at which it is introduced receive unanimous consent for consideration? If this is answered in the affirmative, then the second issue which arises is whether this resolution received unanimous consent for consideration. I would find that this resolution was not given the unanimous consent required, and I would reverse and remand.
This is an appeal from an order denying injunctive relief to Joe Reed, a member of the Montgomery City Council, challenging the validity of Resolution No. 678-75. This resolution concerned a budget program for the expenditure of funds appropriated to Montgomery by the Federal Housing and Community Development Act of 1975.
On October 28, 1975, the City Council met in regular session and adopted Resolution 616-75, which provided for a public hearing on November 18, 1975, to receive recommendations to the City Council from a Citizens' Participation Group regarding expenditure of these funds. These hearings were held, and on November 25, the City Council was presented with the resolution in question. As the minutes of the meeting reflect, there were two dissenting votes against the passage of the Resolution.
The Montgomery City Council is governed by Section 3.15 of Act No. 618, Vol. II, p. 889, of the Regular 1973 Session, which states in pertinent part:
"No Resolution, by-law or ordinance granting any franchise, appropriating any money for any purpose, providing for any public improvements, any regulation concerning the public health, or of any other general or permanent nature, except *931 the proclamation of quarantine, shall be enacted except at a regular public meeting of said council or an adjournment thereof. Every ordinance introduced at any and every such meeting shall be in writing and read before any vote thereon shall be taken, and the yeas and nays thereon shall be recorded; provided that if the vote of all councilmen present be unanimous, it may be so stated in the journal without recording the yeas and nays . . . No ordinance of permanent operation shall be passed at the meeting at which it was introduced except by unanimous consent of all members of the council present, and such unanimous consent shall be shown by the yea and nay votes entered upon the minutes of said meeting; provided however, that if all members of the council present vote for the passage of the ordinance and their names are so entered of record as voting in favor thereof, it shall be construed as giving unanimous consent to the action upon such ordinance at the meeting at which it is introduced."
The City of Montgomery contends that the statute requires unanimous consent for ordinances only. It is urged that we adopt this argument based upon the fact that the statute specifically refers to resolutions in a preceding sentence but not in the sentence which states, "No ordinance of permanent operation shall be passed at the meeting at which it was introduced except by the unanimous consent of all of the members of the council present."
To construe this statute in such a vein would defeat the purpose of that statute and strain its literal meaning. Also it is important to note that the City of Montgomery is governed by local requirements which are necessary for the passage of ordinances and resolutions. Section 17, Ordinance No. 77-75 provides:
"All Ordinances and Resolutions submitted to the Council shall lie over until the next regular meeting; provided, that such ordinances, or resolutions may be considered earlier by unanimous consent of the Council; and provided further, that this rule shall not apply to the current expenses of, or contracts previously made with, of regular salaries of officers, of, or wages of employees of the city."
This ordinance, while not conflicting with the State's statute, is more restrictive and requires both ordinances and resolutions to lie over until the next regular meeting unless unanimous consent has been given by the Council.
The main contention put forth by counsel for the City of Montgomery is that the statute and local Ordinance No. 77-75 do not require unanimous consent for passage of a resolution, but rather unanimous consent for consideration. The trial Court construed that the words "unanimous consent" referred to an "unanimous consent" for consideration.
If the trial Court's construction is correct, then there would be two different times at which unanimous consent could be obtained: (1) by a vote on the motion bringing the proposed resolution before the Council for consideration; or (2) by an unanimous vote passing the resolution when the Council failed to vote on the issue.
It is clear that the City Council failed to give unanimous consent either for consideration, or for passage. The minutes of the meeting, which are the best evidence,[1] show that the Council never discussed whether this resolution should be considered.
The minutes do reflect that the Council passed Resolution No. 677-75, the resolution preceding the one in question, and then Councilman Folmar introduced the following resolution:

"A RESOLUTION 678-75
"WHEREAS, the City Council of the City of Montgomery has received the recommendations of the Citizens' Participation Group; and
"WHEREAS, the Citizens' Participation Group developed those recommendations *932 after holding the appropriate public hearings; and
"WHEREAS, the City Council has reviewed and considered the recommendations of the Citizens' Participation Group; and
"WHEREAS, the Community Development Program as prepared by the City Council on this date, is made a part of this resolution; and
"WHEREAS, the Community Development Program has been developed in accordance with relevant Department of Housing and Urban Development procedures published to date in the Federal Register:
"NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that the City Council hereby approves the aforesaid budget and authorizes Jim Robinson, Mayor, to direct the Department of Planning and Development to prepare the Community Development Block Grant Application ..."
The minutes then show a breakdown of the budget and how the money was to be spent. The crucial language of the minutes shows:
"Councilman Folmar moved the adoption of the foregoing resolution.
"The resolution was adopted by the following vote:
"AYES: Peak, Golson, Oliver, Harris, Dixon, Folmar, and Williamson.

"NAYS: Reed and Caswell." [Emphasis added.]
Nowhere do the minutes reflect that the Council voted upon the consideration of the resolution. Therefore, assuming that the City of Montgomery's contention is valid in construing these statutes, the essential requirements of unanimous consent were not satisfied.
I believe, however, that the City's construction does not conform to the language nor the purpose of the statute; and I would hold that the words "unanimous consent" refer to the voting on the passage of the proposed resolution.
The pertinent part of the statute is indeed broken into two alternatives, each referring either to "shall be passed" or "passage" when unanimous consent is used. Nowhere is the term "consideration" used or alluded to in this statute.
A more logical interpretation would be that the statute allows two methods of recording the votes and determining whether passage was by unanimous consent: (1) by a voice vote, "All those in favor say aye; all those opposed say nay"; or (2) by a formal roll call vote with each vote recorded separately.
The statute states the first method for recording the vote as follows:
"No ordinance of permanent operation shall be passed at the meeting at which it was introduced except by unanimous consent of all members of the council present, and such unanimous consent shall be shown by the yea and nay votes entered upon the minutes of said meeting:" [Emphasis added.]
The second method is stated in the concluding parts of this same sentence:
"[P]rovided, however, that if all members of the council present vote for the passage of the ordinance and their names are so entered of record as voting in favor thereof, it shall be construed as giving unanimous consent to the action upon such ordinance at the meeting of which it is introduced." [Emphasis added.]
The City of Montgomery further contends Resolution No. 678-75 met the requirements necessary for passage as set forth in Section 17, Ordinance No. 77-75 (cited above, of the City of Montgomery, because the vote for consideration was unanimous).
We are not called upon to rule on the validity of Montgomery Ordinance 77-75, Section 17, but the interpretation urged by the City of Montgomery is in conflict with the legislative act. To adopt the City of Montgomery's interpretation would in effect *933 nullify a state law. A basic principle of our system of government is the superiority of state law. City of Mobile v. Garrett-Montgomery, Inc., 281 Ala. 204, 201 So.2d 42 (1967). A city does not have the power to, by ordinance, change its municipal charter as granted by the state legislature.
A review of the evidence clearly shows that the vote on the passage of the resolution was not by unanimous consent. This can be shown by a study of the minutes of the meeting of November 25, 1975, which were offered into evidence as plaintiff's exhibit Number 5. It is shown that Reed and Caswell voted against Resolution No. 678-75. It is settled Alabama law that records of a municipal council are not only properly admissible in evidence to prove the facts stated therein but are the best evidence of such facts. Mayor and City Council of Anniston v. Davis, 98 Ala. 629, 13 So. 331 (1892); Alabama City, G. & A. Ry. Co. v. City of Gadsden, 185 Ala. 263, 64 So. 91 (1913). Such a record, when regular and complete on its face, may not be attacked in a collateral proceeding. Mayor and City Council of Anniston v. Davis, supra. Thus, on the record before us, it is clear that there was no unanimous consent and the resolution, in my opinion, is void.
While granting or refusing an injunction is largely discretionary with the trial Court, the term discretion implies sound judicial discretion which is reviewable on appeal. Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574 (1917). This discretion is based upon a study of the facts and the application of the law based upon those facts. Under the state of the evidence as disclosed by the record, I would hold that the trial Judge misapplied the law and thus erred in upholding the validity of Resolution No. 678-75. Therefore, I would hold that the trial Court's order denying the injunction is not supported by competent evidence.
HEFLIN, C. J., and FAULKNER and SHORES, JJ., concur.
NOTES
[1] See Mayor and City Council of Anniston v. Davis, 98 Ala. 629, 13 So. 331 (1892); Alabama City, G. & A. Ry. Co. v. City of Gadsden, 185 Ala. 263, 64 So. 91 (1913).