This case arose out of a dispute between Alabama Power Company and James Martin regarding the existence of a flood easement on Martin's property. This property is fronted by the Coosa River and is located in Riverside, a community outside Pell City.
In April of 1963, Martin's predecessors in title, the Kilgores, entered into a land contract with Alabama Power Company through its agent, Walter Smith. This contract granted in fee to the Power Company all their land "which would be covered with or which either alone or together with other lands would be entirely surrounded by waters of the Coosa River or its tributaries should such river or its tributaries be raised and backed up to that certain datum plane of 466 feet above mean sea level. . . ." The Kilgores also granted to the Power Company "the right to flood, cover or surround with water from time to time that portion of the lands hereinafter described which lie above such datum plane [466 feet] and which would be flooded, covered with or surrounded by such waters should such river or its tributaries be raised and backed up to that certain datum level of 475 feet above such mean sea level. . . ." This grant of an easement is the subject of the law suit.
Several residents of Riverside testified that they had entered into similar contracts with the Power Company. They further testified that Walter Smith, the Power Company's agent, told them they could build up their lots above 475 feet with fill dirt collected from the pool area of the Coosa River bed. Mr. Kilgore testified that agents of the Power Company told him that if dirt was filled in which raised his property *Page 697 
above 475 feet, that portion of the property would not be subject to the easement. Kilgore stated that he executed the contract based upon these representations. Kilgore then sold his land to his neighbor, W.A. Coleman. Before purchasing the property, Coleman called Walter Smith to see if he could extinguish part of the easement by raising the property's elevation with fill dirt. The testimony shows:
 "Question: What did Walter Smith say to you relative to filling in this lot at one time was owned by you and is now owned by Jim Martin?
 "Answer: . . . he said it would be all right to put the dirt there. And I could raise it up which I did with his approval. And [Walter Smith] was in Riverside and saw the operation that went on."
This property was ultimately conveyed to Martin and he took possession with knowledge of the representations made by Smith to the Kilgores and Coleman. Martin erected a foundation on that portion of the property which was subject to the easement but had been elevated by the addition of fill dirt. There was conflicting testimony as to the present elevation, but at one time this portion of the property was above 475 feet.
In 1975, the Power Company filed suit against Martin seeking a permanent injunction which would prohibit any construction on the easement area.
Martin's answer alleged that agents of the Power Company made an oral agreement with his predecessors in title and that the conditions of this agreement was fulfilled. As a result, Martin claims that the easement has been extinguished. Furthermore, Martin alleges that he relied on these agreements to his detriment; and, therefore, the Power Company should be estopped from claiming any easement.
The trial Judge, hearing the evidence ore tenus, made the following findings of fact:
"1. That agents of the Power Company made representations to the land owners, including Martin's predecessors in title, that the land between 466 and 475 feet sea level could be filled and the lands thereby taken out of the easement.
"2. That Martin's predecessors in title used fill dirt to build up the remaining portion of the lot to an elevation exceeding 475' above sea level.
"3. That these predecessors in title fully performed and executed the oral agreement between themselves and the Power Company's agent.
"4. That the Power Company, through its agents, had knowledge of Martin's predecessors in title filling operations conducted in accordance with this oral agreement.
"5. That the Power Company took no action to restrain this activity.
"6. That Martin has caused ten to twelve inches of fill dirt to be placed on the property in question.
"7. That Martin has built a concrete foundation upon this property.
"8. That Martin had been informed of an oral agreement which had been made between the Power Company's agent and Martin's predecessors in title whereby it was agreed that the property could be built up and the easement extinguished.
"9. That Martin believed that this oral agreement had been executed and that the Power Company no longer claimed an easement in that portion of the lot that was filled in and built up.
"10. That because of this information and belief, and upon previous representations made by the Power Company before the execution of the oral agreement and upon the subsequent conduct and silence of the Power Company after the execution of the agreement, Martin purchased this lot for a more expensive price and caused such fill and concrete foundation to be placed thereon.
"11. That Martin would be greatly damaged if the Power Company is allowed to assert an easement."
We are constrained from reviewing the findings of fact by the trial Judge unless his findings are not supported by credible *Page 698 
evidence or are manifestly unjust. Thus, we hold that these findings are not reviewable because they are supported by credible evidence, and are not, in our opinion, palpably wrong or manifestly unjust.
The Power Company's main thrust is that the statute of frauds renders void any oral agreement concerning the extinguishment of the easement. Counsel for Martin readily admit that the general rule in Alabama is that an easement (both as to its grant and as to its extinguishment) is subject to the statute of frauds and, therefore, must be in writing. Carter v.Stringfellow, 293 Ala. 525, 306 So.2d 273 (1975).
Martin urges, citing Stearnes v. Woodall, 218 Ala. 128,117 So. 643 (1928), an exception to that rule: If a parole agreement to extinguish or modify an easement is based on consideration and has been fully performed and executed by the parties, the agreement is outside the statute of frauds.
Because of our holding below that the property, as restructured under the agreement of the parties, is outside the easement grant — and thus the easement has not been extinguished — we find the statute of frauds (both the general rule as contended by the Power Company, and its exception as contended by Martin) is not pertinent to our disposition of this case.
After examining the instrument granting the easement and looking to the trial Court's findings of fact, we discern that the property in question is not subject to the easement as long as it is above 475' datum sea level. The critical descriptive language does not speak in terms of metes and bounds but rather in elevation. The purpose and intent of this easement is to allow the Power Company sufficient land area above the average water level if flooding should ever occur. Therefore, the Power Company's easement must be measurable by altitude, not latitude or longitude.
Of course, this reasoning gives rise to the argument that Martin has improperly interfered with the proper enjoyment of the Power Company's easement. There is no question that the general rule in Alabama is: The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of the easement by the owner of the dominant estate. Brown v. Alabama Power Company, 275 Ala. 467,156 So.2d 153 (1963); Collins v. Alabama Power Company, 214 Ala. 643,108 So. 868 (1926).
We find in this case, however, that the Power Company is estopped from making any claim against Martin concerning possible interference with the former flood easement area. As this Court stated in Mazer v. Jackson Insurance Agency, Ala.,340 So.2d 770 [1976]:
 "Estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."
These elements are present in the case at bar. The actor was the Power Company's agent, Walter Smith. Although he had knowledge of the true facts — a subservient tenant whose interference with the enjoyment of the dominant estate's easement had been induced as a consideration for the purchase of the property — he misled Martin's predecessors in title. The trial Court in its findings of fact found that Martin had knowledge of the communication and relied on it to his detriment. The trial Court further found that Martin would be greatly damaged if the Power Company was allowed to assert rights to the easement.
Although neither party addressed the question of potential liability, it is the responsibility of Martin to maintain the elevation of the land in question above 475 feet. Otherwise, that portion of the property which settles below this level, as well as any footings or foundations of structures that descend below the 475-foot level, become subject to the easement according to our interpretation of the deed. *Page 699 
It should be noted that this flood easement has not been extinguished. The only way to extinguish this easement (absent prescription or adverse possession) would be by the manner in which it was created (by grant). See Camp v. Milam, 291 Ala. 12, 277 So.2d 95 (1973). This is not what happened in this case. Because of the application of estoppel, Martin's actions in raising his property above the 475-foot level prohibits the Power Company from asserting any rights in that property. Thus the trial Court is affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, EMBRY and BEATTY, JJ., concur.