559 So.2d 158 (1990)
ALABAMA POWER COMPANY
v.
Silvia Easterwood DRUMMOND.
88-990.
Supreme Court of Alabama.
February 16, 1990.
James H. Miller III, Dan H. McCrary and James H. Hancock, Jr. of Balch & Bingham, Birmingham, for appellant.
H. Thomas Wells, Jr. and Alfred F. Smith, Jr. of Maynard, Cooper, Frierson & Gale, Birmingham, for appellee.
HORNSBY, Chief Justice.
Alabama Power Company (hereinafter "APCo") appeals from the judgment of the Circuit Court of Walker County granting Silvia Drummond the right to maintain an *159 existing encroachment onto APCo's flood easement adjacent to Drummond's land.
Silvia Drummond owns a parcel of land in Walker County known as lot 1 in Longview Subdivision. This land is adjacent to Lewis M. Smith Reservoir ("Smith Lake"), an APCo hydroelectric development. APCo acquired much of the land around what is now Smith Lake in the years prior to the development of the lake. Later, however, APCo sold off some parcels of that land. Drummond's land is one such parcel.
APCo acquired the subject property in 1930 from W.H. and Gladys Parker. Thereafter, APCo conveyed this parcel to Alabama Properties Company. APCo retained the fee title to land lying at elevations less than 510 feet above mean sea level, and retained a flood easement over lands lying between 510 and 522 feet above mean sea level and the right of ingress to and egress from that easement. The conveyance to Alabama Properties Company also contained certain restrictive covenants. Those covenants are as follows:
"As a part of the consideration for this conveyance, Grantee, for itself and for its successors and assigns, covenants and agrees with Grantor, its successors and assigns, that no improvements which are used or which are designed or intended to be used for habitation by persons or animals shall ever hereafter be constructed on that portion of the lands hereby conveyed lying between elevations 510 feet and 522 feet above the mean sea level heretofore mentioned. Since such area is subject to flooding from time to time Grantee agrees and covenants that it and its successors and assigns will remove or cause to be removed from such area any such improvements which are now or which may hereafter be located on such area. Grantee and Grantor further covenant and agree that the foregoing covenant and agreement touches, benefits, and concerns both the lands hereby conveyed and the lands adjoining same owned by Grantor, that such covenant and agreement is intended to run with and shall run with the land and shall be binding upon Grantee, its successors and assigns, forever."
(Emphasis added.)
Longview Subdivision was created after Alabama Properties Company took title from APCo, and certain building restrictions, recorded in 1961, were placed on lot 1. Those restrictions provide that a 15-foot sideyard is to be maintained on lot 1. The set-back line from which the sideyard is to begin is at the 522-foot line.
Silvia Drummond's deposition testimony shows that she and her husband, Gary Neil Drummond, acquired title to the subject property in the late 1960's. In 1979, the Drummonds divorced. As a part of the divorce settlement, Gary Drummond conveyed to Silvia Drummond lots 1 and 2 of Longview Subdivision, together with the house situated on lot 1. Lot 2 of these tracts is specifically described as lying between the 510- and 522-foot lines; and lot 2 is specifically encumbered by a flood easement in favor of APCo.
It appears to be undisputed that Silvia Drummond was aware of the flood easement. Her deposition testimony indicates that she was aware that the easement covered land up to the 522-foot line and that she may have known this for as long as 10 years before the challenged construction was begun. She also indicates that the contractors who performed the construction work were also aware of the easement. The evidence is disputed as to whether these contractors made Drummond aware that the proposed addition to her home would encroach into the flood easement. Despite the fact that the flood easement and restrictive covenants were a matter of public record, Drummond constructed an addition to her home that now encroaches onto the APCo flood easement. Certain "fill material" was also placed in the easement.
APCo filed suit in this matter on January 29, 1985. In its complaint, APCo sought a permanent injunction enjoining Drummond from "maintaining [the] house and associated structures within plaintiff's flood easement" and from maintaining the fill *160 material in the easement, and requiring Drummond to remove the addition, the fill material, and "associated structures" within the easement. Drummond points out, however, that APCo has in the past granted numerous persons "waivers" from its flood easements and has not sought to have the encroaching structures removed.
After a hearing, the trial court entered a memorandum opinion and order, which, in part, reads as follows:
"Drummond acknowledges that a portion of her home is located below the 522-foot contour line, but offered evidence at trial that the encroachment was unintentional. The defendant's home is worth approximately $450,000. The offending portion of the structure cannot be removed without substantially impairing the value of the whole. Drummond argues that equitable principles militate against ordering her to remove that portion of her home located in the flood easement area.
"After carefully considering the submissions of the parties and the evidence as presented at trial, this Court finds that a portion of the defendant's property is located below the datum plane of 522 feet above mean sea level, which constitutes a technical encroachment on the Power Company's flood easement. However, the Court also finds that the defendant's interference with the Power Company's property rights was not intentional, willful, or knowing. The Court also finds that damages to the Power Company because of the defendant's intrusion into the flood easement are infinitesimal, and that it would not be equitable nor reasonable to force removal of the structure if any other available remedy is present.
"THEREFORE, based upon consideration and balancing of the relative equities involved, this Court holds that under the unique circumstances of this case the proper remedy is not unconditional removal of the encroachment, but to require defendant to substitute a compensating volume of flood easement space from the defendant's adjoining property upon the imposition of conditions to protect plaintiff and plaintiff's rights.
"Based upon the foregoing, this Court hereby ORDERS, ADJUDGES and DECREES that the defendant shall be required to remove her encroaching structure unless she fulfills the following conditions, otherwise the structure to be removed within one year:
"1. Obtain at her own expense plans certified by a professional engineer for recontouring the Defendant's property in such a way as to provide the Power Company with compensating volume of flood storage area. The plans are to be submitted to the Power Company for [its] review and comment as to the compensating volume. It has become known to the Court that such plans have been prepared and submitted to the Power Company, and that the Power Company has reviewed such plans and agrees with the calculations as to compensating volume. The subsequent work pursuant to the engineering plans should be accomplished in a workmanlike manner, performed not later than one year from the date hereof, and paid for entirely by the Defendant.
"2. Execute an appropriate agreement to hold the Power Company and its officers, agents, servants and employees harmless and indemnify them or their successors and assigns forever as a result of the encroachment and/or the remedy provided by this Court herein, such hold-harmless/indemnity agreement to run with the land and be binding on the Defendant's successors and assigns.
"3. Pay any and all actual costs incurred by the Power Company in responding to any inquiry by the Federal Energy Regulatory Commission (or any agent, servant or employee of the Commission) which shall include but not be limited to hearings, notices of hearings, inquiries, requests for information, data requests, or any other type of notice, demand, hearing or process which arises out of the Defendant's compensating volume proposal, recontouring of property, or altering the project boundaries of the Lewis M. Smith Reservoir.

*161 "4. It [is] further ORDERED, ADJUDGED and DECREED that the Defendant be restrained and permanently enjoined from other or further violations of APCo's flood easement or enlarging upon the encroachment in any way that violates that easement.
"5. That in the event there is a destruction of the premises from fire, water, wind, tornado or any other such event, then the Defendant shall not be allowed to rebuild the structure but must remove the fill dirt and return the contours to their pre-encroachment condition.
"Costs taxed to Defendant."

Discussion
Our review of the trial court's order indicates that the judge attempted to balance the parties' interests in the case at hand. APCo argues in its brief that the trial court erred by "balancing the relative equities." APCo argues that Alabama law precludes the trial court from balancing the equities in a case like this one. We note, however, that the issuance of injunctive relief is a matter left to the sound discretion of the trial court. Hood v. Neil, 502 So.2d 749 (Ala.1987); Powell v. Phenix Federal Savings & Loan Ass'n, 434 So.2d 247 (Ala.1983). Thus, APCo must show that the trial court committed plain and palpable error to warrant a reversal. Reed v. City of Montgomery, 341 So.2d 926 (Ala. 1976); Ex parte Jones, 246 Ala. 433, 20 So.2d 859 (1945). Granting injunctive relief is within the trial court's discretion especially where, as here, the evidence was presented only to the trial court and not to a jury. Powell, supra. The trial court's judgment may be reversed if the court violates a principle of equity or misapprehends a controlling principle of law. Id. at 251.
It is also well recognized that Alabama law requires the owner of a servient tenement to refrain from doing any act that would interfere with or be inconsistent with the proper right to use and enjoy the easement vested in the owner of the dominant tenement. Alabama Power Co. v. Martin, 341 So.2d 695 (Ala.1977). See also Brown v. Alabama Power Co., 275 Ala. 467, 156 So.2d 153 (1963) (owner of the servient estate may not interfere with the dominant estate); Collins v. Alabama Power Co., 214 Ala. 643, 108 So. 868 (1926) (servient estate owner not allowed to build house on power line easement). It is also well settled that one who takes land "with notice of, an easement, takes the estate subject to such easement." Brown, supra, 275 Ala. at 470, 156 So.2d at 155.
Drummond and APCo have stipulated that the construction of the addition to the Drummond house constitutes an encroachment onto APCo's flood easement. Drummond contends, however, that the encroachment is, as found by the trial court, "infinitesimal" and that if APCo, under its easement, were to flood the land up to the 522-foot line, only the "footings" of the house would be under water.
In Brown, supra, a case in which the servient owner built a house on APCo's flood easement, this Court stated:
"Should the [servient landowner's] claim be upheld, then there is no reason why everyone having a servient estate could not nullify an easement to flood by placing on the servient estate buildings or dikes or fills which would completely destroy, by preventing water from coming on the servient estate, the easement to flood such servient estate. That such obstruction is of minor degree furnishes no standard for justification if the obstruction clearly be an interference with the enjoyment of the easement."
Brown, supra, 275 Ala. at 471, 156 So.2d at 156 (emphasis added).
However, Brown and the other cases cited to us by APCo do not stand for the proposition that removal of the offending structure is the sole remedy allowed under the trial court's equitable jurisdiction. In fact, certain of the cases cited by APCo have allowed an encroaching structure to remain in place pending some other remedy. See, e.g., Magna, Inc. v. Catranis, 512 So.2d 912 (Ala.1987) (damages allowed); Hood v. Neil, 502 So.2d 749 (Ala.1987) *162 (damages allowed and injunctive relief denied).
The equity powers of a trial court are broad. The United States Supreme Court has discussed the extent of those powers as follows:
"The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." Hecht Co. v. Bowles, 321 U.S. 321, 329-330[, 64 S.Ct. 587, 591-92, 88 L.Ed. 754] (1944), cited in Brown II, [349 U.S. 294 (1955) ] at 300 [, 75 S.Ct. 753, at 756, 99 L.Ed. 1083]."
Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).
This broad power to fashion judgments applies in the context of an injunction action, and the trial court may refuse injunctive relief in its attempt to do equity in a given case. A court may "balance the equities" in deciding whether to grant an injunction, and may specifically consider the "convenience" of the requested relief to both the plaintiff and the defendant. H. Joyce, Joyce on Injunctions § 20 at 41 (1909).
In the present case, the trial court fashioned a judgment that sought to protect both parties to the litigation. The trial court found that Drummond had mistakenly built the addition on APCo's flood easement and that substantial damage would be done to her house by removal of the small encroachment. Moreover, there is evidence in the record tending to support the trial court's conclusion that Drummond was unaware that the addition actually encroached into the APCo easement until construction was virtually complete and that the encroachment was not knowingly or intentionally erected. APCo also received great protection under the trial court's order, and Drummond may yet be required to remove the encroachment if she fails to comply with the conditions of the trial court's order.
Based upon our review of the law and the evidence in this case, we cannot say that the trial court erred. Its judgment is, therefore, affirmed.
AFFIRMED.
JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
In Magna, Inc. v. Catranis, 512 So.2d 912, 913 (Ala.1987), we held:
"An easement is property, 2 Thompson on Real Property 3, § 315 (1980); 2 American Law of Property, 236, §§ 8, 10 (1952); and it comes within the constitutional provision that no person shall be deprived of his property without due process. Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9 (1917).
"The owner of a servient estate must abstain from acts interfering with or inconsistent with the proper enjoyment of an easement by the owner of the dominant estate. Snider v. Alabama Power Co., 346 So.2d 946 (Ala.1977); Alabama Power Co. v. Martin, 341 So.2d 695 (Ala. 1977)."
Alabama Power Company has the right to flood each square foot of the property on which it has a floodage easement. This is a property right. My respect for property rights will not permit me to diminish or reduce Alabama Power Company's rights simply because it does not need to use at all times all of the property to which it has property rights. Our federal and state constitutions protect such rights and would prohibit judicial deprivation or diminution of such rights based solely upon a judicial determination that in depriving the owner of that property right it can "adjust the equities." I would reverse and remand on the authority of Magna, Inc. v. Catranis, supra; McGuire v. Lawrence, 523 So.2d 380 (Ala. 1988); Snider v. Alabama Power Co., 346 So.2d 946 (Ala.1977); Brown v. *163 Alabama Power Co., 275 Ala. 467, 156 So.2d 153 (1963).
MADDOX, J., concurs.
STEAGALL, Justice (dissenting).
I concur in Justice Houston's dissent. I also point out that the majority opinion acknowledges that the appellee was aware of the flood easement. The appellant's flood easement was recorded, and it is undisputed that the appellee's landscape architect and designer had actual knowledge of the existence and location of that easement prior to the commencement of construction.
The appellee testified as follows:
"Q. And what did he [the designer] tell you?
"A. He told me he knew about it, but he didn't think anything would ever become of it.
"Q. He told you that he knew about it all along, didn't he?
"A. Yes.
"Q. In other words, your designated representative, your authorized man on the scene, knew all along that you were building your addition in the flood easement?
"A. That's right.
"Q. How about Mr. Starbuck [the landscape architect], what did he tell you?
"A. I think he knew about it, too.
"Q. So, here we have the two people that you had sort of authorized to act on your behalf, and they both knew all along; didn't they?
"A. Yes, sir."
Even under a "balancing of the equities" test, in my opinion, this knowledge of the easement prior to construction should weigh heavily in favor of the appellant.
I respectfully dissent.