The Mt. Zion Water Authority petitions for a writ of mandamus directed to the Court of Civil Appeals ordering that court to set aside a writ of mandamus it has entered directed to Circuit Judge Randall Cole of the Cherokee Circuit Court.
The primary issue presented by this expedited petition is whether a circuit court can permit a public water authority to continue to operate, even though the Alabama Department of Environmental Management ("ADEM") has determined, and proved to the court, that the water it supplies fails to comply with environmental laws and regulations.
Stated differently, the issue is whether the circuit court, after having found that ADEM had sustained its burden of proof showing that it was entitled to an injunction against a local water authority, could suspend the effect of that injunction for a period of 60 days to 6 months.
In addition to addressing the central issue, we also address other contentions that the petitioner raises, viz.: 1) that the Court of Civil Appeals had no appellate jurisdiction in this case, 2) that ADEM was not entitled to a writ of mandamus from the Court of Civil Appeals because it failed to show that it was clearly entitled to the relief it sought, and 3) that the Court of Civil Appeals granted the writ of mandamus without providing the Water Authority notice and the opportunity to be heard required by the Rules of Appellate Procedure, specifically Rule 21, Ala.R.App.P.
In issuing its writ of mandamus, the Court of Civil Appeals did not issue an opinion. There is currently pending in the Court of Civil Appeals an appeal (docket number 2910392) arising out of the same proceeding in the circuit court.
 FACTS
The Mount Zion Water Authority ("the Water Authority") was formed some 10 to 12 years ago by the residents of the Mount Zion community in Cherokee County, Alabama, to build a water system to supply drinking water to community homes and *Page 1115 
businesses. The Water Authority installed water lines and pumps, erected a storage tank, and tapped into the Mount Zion spring, the only local, natural aquifer. The Authority now supplies drinking water to approximately 89 families in the community.
In the fall of 1991, water samples taken from the system operated by the Water Authority showed violations of the State's Primary Water Standards for turbidity and microbiological maximum contaminant level ("MCL").[1]
Specifically, fecal coliform bacteria and regular coliform bacteria (E. coli) were detected in the samples taken. Rather than immediately suspending or revoking the Water Authority's permit, ADEM issued water supply permit number 91-649 on September 30, 1991. That permit contained the following special conditions:
"Special Condition No. 1.
 "That within sixty (60) days, the permittee must document compliance with treatment and filtration requirements for springs under the direct influence of surface water; and
"Special Condition No. 2.
 "That if compliance with treatment and filtration requirements is not documented within sixty (60) days, the Permittee shall discontinue use of the spring as a source until such time as compliance with treatment and filtration requirements is documented, or until an alternative and acceptable water source is secured."
The Water Authority's monthly turbidity reports for January through March 1992 showed continuing violations of ADEM's turbidity requirements, as those requirements were set forth in ADEM Admin. Code R. 335-7-2-.05(1)(a) (1990). Laboratory bacteriological testing of water samples taken for the months of September 1991 through March 1992 revealed the continued presence of regular and fecal coliform in violation of ADEM's microbiological MCL.
On February 14, 1992, ADEM issued administrative order number 92-46-DW, which suspended the Water Authority's water supply permit and prohibited the Authority from supplying water for public consumption until its permit was reinstated. The Water Authority timely filed an appeal of ADEM's administrative order with the Environmental Management Commission ("the EMC"), and requested a stay of ADEM's order pending that appeal.[2]
On April 2, 1992, ADEM, by and through Attorney General Jimmy Evans, filed a complaint in the Circuit Court of Cherokee County and applied for an injunction to restrain the Water Authority from further operation. Judge Cole held a hearing on the application for the injunction and afterwards made written findings of fact; he granted ADEM's request for an injunction, but stayed the effect of the injunction for 60 days to 6 months. Judge Cole's order reads, in pertinent part, as follows:
 "The events preceding the present action are summarized as follows:
 "(1) The permit issued by ADEM to the Mount Zion Water Authority on September 30, 1991, was issued with two special conditions:
 "(a) That within sixty (60) days, the Permittee must document compliance with treatment and filtration requirements for springs under the direct influence of surface waters; and
 "(b) That if compliance with treatment and filtration requirements is not documented within sixty (60) days, the Permittee shall discontinue use of the spring as a source until such time as compliance with treatment and filtration requirements is documented. *Page 1116 
 "(2) Mount Zion Water Authority failed to provide documentation of compliance with treatment and filtration requirements within sixty days of September 30, 1991, and on February 14, 1992, ADEM issued an administrative order suspending Mount Zion's authority to operate under the permit.
 "(3) Mount Zion filed an appeal of the administrative order with the Alabama Environmental Management Commission which is presently pending.
 "The evidence is that the Mount Zion Water Authority was organized 10 to 12 years ago by persons within the community it serves because residential wells were inadequate and no public water was available. The Authority now serves approximately eighty-nine residential customers, most of whom have no source of water other than the Authority. The customers have been notified by the Authority that the water may be unsafe for drinking and should be boiled.
 "Keith Davis, a professional engineer at Ladd Environmental, Inc., testified that he was hired by Mount Zion in late 1991 to assist it in bringing its water in compliance with ADEM regulations and that he found there to be three alternative ways of doing so:
 "(1) Install a filtration system at a cost of approximately $400,000.00 and employ a full time operator. He and the Authority determined that the cost of installation plus employment of an operator was prohibitive for a system as small as Mount Zion.
 "(2) Connect to the Northeast Alabama Water Authority's line as a source of water. Davis recommended against this procedure because the ground elevation would provide insufficient pressure to meet ADEM regulations unless pumps were used along the line, and if pumps were used, there would be a likelihood that the resulting pressure would exceed the capacity of the pipes.
 "(3) The final alternative is that Mount Zion connect with the lines of the Cherokee County Water Authority which could provide a gravity feed. The cost of running pipe approximately 14,000 feet, making the connection and erecting a tank is estimated at $210,000.
 "The Mount Zion Water Authority Board has chosen the last of the above alternatives and is in the process of applying for a grant from the East Alabama Planning Agency for funds to implement this change in its source of water. The engineer, Mr. Davis, estimated that it will take six months for funding to be obtained and the project to be completed. "ADEM, in discharging its responsibilities to administer the provisions of the Alabama Safe Drinking Water Act, properly seeks to remedy conditions that may endanger the health of this State's citizens and the court agrees that Mount Zion must cease to provide substandard water to its customers. The court cannot ignore, however, the consequences which an immediate cessation of services by Mount Zion may have on its customers, especially those who have no other source of water.
 "Accordingly, IT IS ADJUDGED AND DECREED as follows:
 "1. That after 60 days from the date of this order, the Mt. Zion Water Authority is enjoined and restrained from further operation.
 "2. That in the event the Authority can show to the court within such 60 days that it has secured funding for connecting its line to the Cherokee County Water Authority line and that plans are being pursued toward implementation of such plan, the court will extend the effective date of the injunction not to exceed six months from the date of this order.
"3. Other relief is denied."
ADEM challenged Judge Cole's order staying the effect of the injunction by filing in the Court of Civil Appeals a petition for a writ of mandamus directing Judge Cole to vacate his stay of the injunction and to make the injunction effective immediately. The Court of Civil Appeals issued the writ, without giving the Water Authority an opportunity to respond, or to file briefs. On May 8, 1992, Judge Cole vacated *Page 1117 
his stay of the injunction as ordered by the Court of Civil Appeals.
On that same day, the Water Authority filed in this Court its petition for a writ of mandamus and a request for a stay of the Court of Civil Appeals' writ. This Court issued an order staying the Court of Civil Appeals' writ of mandamus and expedited the briefing schedule in regard to the petition filed here.
 I.
The Water Authority makes three arguments as to why the writ of mandamus should issue to the Court of Civil Appeals directing it to vacate its writ of mandamus and ordering it to reinstate the trial court's original order. Initially, the Water Authority argues that the trial court had the power to grant ADEM's requested injunction and then to stay the effect of that injunction. ADEM, on the other hand, argues that the trial court, having found that it was entitled to an injunction, was without power to apply equitable principles and stay the effect of that injunction. ADEM claims that "[Judge Cole's] substitution of [his] judgment for that of [ADEM] is contrary to established principles of administrative law and practice."
ADEM strongly urges this Court to adopt, in regard to injunctions sought by a government agency seeking to enforce public health legislation, a legal standard different from that applied in cases between private litigants. ADEM argues that in cases involving the enforcement of environmental laws and regulations, especially those affecting the public health, if it sustains its burden of proving a violation of the laws and regulations it administers, as the trial court found it did in this case, then a trial court is without authority to stay or modify ADEM's administrative order. In support of its legal position, ADEM urges us to adopt an approach similar to that followed in other jurisdictions, as set out in United States v.Odessa Union Warehouse Co-Op, 833 F.2d 172 (9th Cir. 1987). In its brief, ADEM argues as follows:
 "When deciding whether to issue an injunction authorized by statute to enforce and implement a legislative policy to protect the public health, the function of the court is different than when it weighs claims of two private litigants. United States v. Diapulse Corp., 457 F.2d 25, 27
(2d Cir. 1972). The fact that a public health statute is being enforced by the agency charged with that duty alters the burden of proof on the elements necessary to obtain injunctive relief. See, Navel Orange Admin. Comm. v. Exeter Orange Co., 722 F.2d 449 (9th Cir. 1983); American Fruit Growers v. United States, 105 F.2d 722, 725 (9th Cir. 1939). Once the legislative branch exercises its powers and decides the order of priorities in a given area, it is for the court to enforce them when asked. TVA v. Hill, 437 U.S. 153 at 194, 98 S.Ct. 2279 at 2302 [57 L.Ed.2d 117 (1978)].
 "Where an injunction is authorized by a public health statute, and the statutory conditions are satisfied as in the facts presented in this case, the agency to whom the enforcement of the statute has been entrusted is not required to show irreparable injury. Navel Orange, 722 F.2d at 453; see SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975). No specific or immediate showing of the precise way in which violation of the law will result in public harm is required. Diapulse, 457 F.2d at 28. Accordingly, in such cases the courts will review an application for injunction with a presumption that irreparable injury will be suffered by the public if injunctive relief is denied.
 "Nor is the equity court's traditional 'balancing of the equities' approach appropriate when a statutorily authorized injunction is sought by the government to protect the public interest. As the U.S. Supreme Court has noted:
 " ' "Balancing the equities" when considering whether an injunction should issue, is lawyers' jargon for choosing between conflicting public interests. When Congress itself has struck the balance, has defined the weight to be given the competing interests, a court of equity is not justified in ignoring that pronouncement under *Page 1118 
the guise of exercising equitable discretion.' Youngstown Sheet Tube Co. v. Sawyer, 343 U.S. 579, 609-10, 72 S.Ct. 863, 896-97, 96 L.Ed. 1153
(1952) (concurring opinion).
"And, as the Fourth Circuit has discussed:
 " '[T]he law of injunctions differs with respect to governmental plaintiffs . . . as opposed to private individuals. Where the plaintiff is a sovereign and where the activity may endanger the public health, "injunctive relief is proper without resort to balancing." Illinois v. Milwaukee, 599 F.2d 151, 166 (7th Cir. 1979), rev'd on other grounds, 451 U.S. 304
[101 S.Ct. 1784, 68 L.Ed.2d 114] . . . (1981). Second, in cases of public health legislation, the emphasis shifts from irreparable injury to concern for the general public interest.' Environmental Defense Fund, Inc. v. Lamphier, 714 F.2d 331, 337-38 (4th Cir. 1983).
 "Furthermore, once ADEM makes a technical appraisal of the violations and the threat presented to the public, evaluates the violator's previous efforts (or lack thereof) to mitigate the violations, and exercises its judgment to seek injunctive relief as the appropriate enforcement mechanism, the circuit court may not find ground for granting the injunction and then postpone the effective date thereof without substituting its judgment for that of the administrative agency. The court's substitution of its judgment for that of the administrative agency is contrary to established principles of administrative law and practice. Alabama Department of Public Health v. Perkins, 469 So.2d 651 (Ala.Civ.App. 1985); Alabama Medicaid Agency v. Light, 507 So.2d 107
(Ala.Civ.App. 1987); Beatty v. Hart, 437 So.2d 594 (Ala.Civ.App. 1983); State Personnel Board v. King, 456 So.2d 80 (Ala.Civ.App. 1984)."
We cannot agree with ADEM that a trial court, when presented with a request by ADEM for a restraining order or injunction under the provisions of Ala. Code 1976, § 22-23-36,[3] is without authority to apply equitable principles in granting the relief requested. Although we recognize the principle of law that courts should not substitute their judgment for that of an administrative agency empowered to protect the public's health and welfare, we are also of the opinion that courts, in fashioning a remedy in such cases, are authorized to apply traditional equitable principles.
This Court has stated:
 "[T]he issuance of injunctive relief is a matter left to the sound discretion of the trial court. Thus, [an appellant or a petitioner] must show that the trial court committed plain and palpable error to warrant a reversal. Granting injunctive relief is within the trial court's discretion especially where, as here, the evidence was presented only to the trial court and not to a jury. The trial court's judgment may be reversed if the court violates a principle of equity or misapprehends a controlling principle of law."
Alabama Power Co. v. Drummond, 559 So.2d 158, 161 (Ala. 1990) (citations omitted).
Because we determine that Judge Cole was authorized to issue a stay of the injunction and that he has not abused the discretion vested in him, we hold that ADEM was not entitled to the writ of mandamus issued by the Court of Civil Appeals.
This Court has often stated that mandamus is an extraordinary remedy requiring a showing that there is: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent *Page 1119 
to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889 (Ala. 1991). Based on the briefs and the record before us, we cannot conclude that the trial court "violate[d] a principle of equity or misapprehend[ed] a controlling principle of law." Drummond,559 So.2d at 161. Thus, ADEM failed to show a clear legal right to the writ of mandamus issued by the Court of Civil Appeals.
 II.
We also find that the Court of Civil Appeals failed to follow the provisions of Rule 21, Ala.R.App.P.,[4] in that it issued the writ of mandamus without affording the Water Authority an opportunity to respond and file briefs in support of its position. Although there could be situations when the urgency of the matter would justify an appellate court's not setting a briefing schedule or allowing a response (and ADEM argues that this is such a situation), we cannot accept ADEM's argument that the Water Authority's opportunity to be heard at the trial court level is sufficient to satisfy the requirements of Rule 21, Ala.R.App.P. On the other hand, we agree with the Water Authority's argument that the Court of Civil Appeals should have allowed the Water Authority to respond to ADEM's petition for the writ of mandamus. An appellate court, when setting the time for a response, could, of course, in the exercise of its discretion, set such a time as may be required by the gravity of the occasion or the necessities of the moment, and it could, taking into account the same factors, prescribe the method for hearing the response. We find no necessity here, however for dispensing with the ordinary procedure of Rule 21. Based on the foregoing, we conclude that the Water Authority was entitled to an opportunity to respond to ADEM's petition and that the Court of Civil Appeals erred in failing to allow a response.
 III.
The Water Authority also argues that the Court of Civil Appeals was without jurisdiction to even consider this matter. We disagree, based on our reading of the apposite statutes and case law.
Ala. Code 1975, § 12-3-10, states:
 "The court of civil appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $10,000.00, all appeals from administrative agencies other than the Alabama public service commission, all appeals in workmen's compensation cases, all appeals in domestic relations cases, including annulment, divorce, adoption and child custody cases and all extraordinary writs arising from appeals in said cases."
(Emphasis added.)
Also, § 12-3-11 states, "Each of the courts of appeals shall have and exercise original jurisdiction in the issuance anddetermination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction." (Emphasis supplied.) Further, this Court has held that §12-3-10 "was intended to grant to the Court of Civil Appeals exclusive jurisdiction of all appeals involving the enforcement of, or challenging, the rules, regulations, orders, actions, or decisions of administrative agencies," even when the appeal is, in form, an appeal from a circuit court. Kimberly-Clark Corp.v. Eagerton, 433 So.2d 452, 454 (Ala. 1983).
Based on the provisions of § 12-3-10 and the holding inKimberly-Clark, the Court of Civil Appeals has jurisdiction over appeals from administrative rulings, other than those of the public service commission, regardless of the form of the appeal, and § 12-3-11 gives the Court of Civil Appeals *Page 1120 
jurisdiction over mandamus petitions in relation to cases over which it has exclusive appellate jurisdiction. Consequently, we cannot agree with the Water Authority's contention that, because the action at trial was for an injunction, it was not within the jurisdiction of the Court of Civil Appeals.
In sum, then, we conclude that the Court of Civil Appeals erred in issuing the writ of mandamus directing Judge Cole to vacate the stay of his injunction against the Water Authority, because we find that Judge Cole did not abuse his discretion in staying the effect of the injunction. In reaching this conclusion, we specifically reject ADEM's argument that injunctions sought by government agencies pursuant to public health statutes should be granted summarily by the circuit courts of this state and that courts are without authority, in fashioning the relief to be granted, to apply equitable principles. Of course, the application of those principles cannot constitute a complete substitution of the court's judgment for that of the administrative agency.
On the procedural issues, we conclude that the Court of Civil Appeals should have allowed the Water Authority to respond to ADEM's petition, pursuant to Rule 21(b), Ala.R.App.P., but we reject the Water Authority's argument that the Court of Civil Appeals had no jurisdiction to entertain ADEM's petition for the writ of mandamus.
Based on the foregoing, we grant the writ of mandamus requested by the Water Authority and hereby order the Court of Civil Appeals to vacate its order directed to the Circuit Court of Cherokee County. The Court of Civil Appeals is further directed to order the circuit court to reinstate its original judgment.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] See, ADEM Admin. Code R. 335-7-1-.01(r) (1990) (defining "MCL" as "the maximum permissible level of a contaminant in drinking water"); see also, ADEM Admin. Code R. 335-7-2-.05 (stating the turbidity requirement), and ADEM Admin. Code R. 335-7-2-.06
(stating the microbiological MCL requirement).
[2] From the record before us, it appears that, on April 13, 1992, a hearing officer with the EMC held an administrative hearing on the Water Authority's administrative appeal, and that the EMC issued an order adopting the hearing officer's findings of fact and recommendation to approve ADEM's administrative order 92-46-DW on April 22, 1992.
[3] Section 22-23-36, Ala. Code 1975, states:
 "The board, upon receipt of information that a contaminant which is present in or is likely to enter a public water system may present an imminent and substantial danger to the public health, may take the following or other appropriate administrative actions:
 "(1) Issue such orders as may be necessary to protect the health of persons who are or may be users of such system, including travelers; and
 "(2) Commence a civil action for appropriate relief, including a restraining order or permanent injunction as provided in sections 22-23-52 and 22-23-53."
[4] Rule 21(b) states, "If the court is of the opinion that the writ [of mandamus] should not be granted, it shall deny the petition. Otherwise, it shall order that an answer to thepetition be filed by the respondents within the time fixed bythe order." (Emphasis supplied.) The clear import of Rule 21(b) is that if a petition for the writ of mandamus is not denied summarily, the court must allow the respondent an opportunity to answer.