Black Warrior Riverkeeper, Inc. ("Riverkeeper"), a nonprofit membership corporation, seeks review of an order of the Walker Circuit Court denying its motion to intervene in a civil action brought by the Alabama Department of Environmental Management ("ADEM") against the East Walker County Sewer Authority ("EWCSA") in which it is alleged, in pertinent part, that EWCSA has violated the conditions of a permit issued by ADEM by discharging polluted water into a portion of the Black Warrior River. Because Riverkeeper is a "person" with "an interest which is or may be adversely affected" by the outcome of that action within the scope of Ala. Code 1975, § 22-22A-5(18)b., we conclude that the trial court erred in denying Riverkeeper's motion to intervene, and we reverse that order.
In October 2005, ADEM brought a civil action against EWCSA in the trial court pursuant to the provisions of two remedial statutes contained within the Alabama Environmental Management Act ("AEMA"), which is codified at Ala. Code 1975, § 22-22A-1 et seq.: §§ 22-22A-5(18)b. (which relates to actions seeking monetary penalties) and 22-22A-5(19) (which relates to actions seeking injunctive relief). ADEM alleged in its complaint that EWCSA had been issued a permit in June 2004 that had "establishe[d] limitations on the discharge of pollutants" emitted from a wastewater-treatment plant operated by EWCSA that flowed into the Mulberry Fork of the Black Warrior River. ADEM further alleged that EWCSA had violated that permit in several respects by permitting excessive amounts of various specified pollutant substances to be discharged from that plant on numerous occasions and that EWCSA had also violated state environmental laws by using a bypass line that had discharged untreated effluent directly into the Mulberry Fork. After the trial court denied ADEM's motion for a default judgment in December 2005 on the basis that EWCSA had not been properly served, ADEM filed a new complaint in January 2006 that did not substantially differ from its earlier complaint. EWCSA was served with a copy of the January 2006 complaint and a summons on April 14, 2006.
On April 28, 2006, Riverkeeper filed a motion to intervene in the action and a proposed seven-count complaint in intervention alleging that EWCSA had violated permit limitations as to biochemical oxygen demand, total residual chlorine, fecal coliform, nitrogen in ammonia form, suspended solids, and total suspended solids and that EWCSA's ongoing violations were due to be enjoined. In its motion, River-keeper alleged that it was entitled to intervene under the provisions of § 22-22A-5(18)b., Ala. Code 1975, which is one of the statutes invoked by ADEM in its complaint and which permits ADEM to bring an action to recover monetary penalties as a consequence of, among other things, violations of environmental statutes or of ADEM permits. That statute provides, in pertinent part, that "[a]ny person having an interest which is or maybe adversely affected may intervene as a matter of right in any civil action commenced under this paragraph" (emphasis added). EWCSA filed an answer denying the principal allegations of ADEM's complaint and filed a memorandum in opposition to Riverkeeper's motion to intervene in which EWCSA argued that Riverkeeper did not qualify for intervention pursuant to any subsection of Rule 24, Ala. R. Civ. P.[1] *Page 72 
In November 2006, the trial court entered an order denying Riverkeeper's motion to intervene. Riverkeeper appealed to this court from that order; neither ADEM nor EWCSA has favored this court with a brief on appeal. We proceed to consider the merits of Riverkeeper's appeal because (a) the trial court's order denying intervention is final and appealable as to Riverkeeper's participation in the action, see Mars HillBaptist Church v. Mars Hill Missionary Baptist Church,761 So.2d 975, 978 (Ala. 1999), and (2) the order was entered in a civil-enforcement action originally brought by a state administrative agency, see Ex parte Mt. Zion WaterAuthority, 599 So.2d 1113, 1119-20 (Ala. 1992).
Riverkeeper raises three issues on appeal. Riverkeeper first contends that it was entitled to intervene as a matter of right, pursuant to the provisions of Rule 24(a)(1), Ala. R. Civ. P., based upon the language of § 22-22A-5(18)b. pertaining to intervention rights of persons having interests in ADEM civil-enforcement actions that "may be adversely affected." River-keeper also contends that it was entitled to intervene, pursuant to Rule 24(a)(2), Ala. R. Civ. P., based upon a claimed "interest relating to the property or transaction which is the subject of the action" and upon Riverkeeper's being "so situated that the disposition of the action may as a practical matter impair or impede [River-keeper's] ability to protect that interest." Finally, Riverkeeper contends that it should have been allowed to participate in the action pursuant to Rule 24(b), Ala. R. Civ. P., which governs permissive intervention. Because we conclude that the first ground raised by Riverkeeper is dispositive of the appeal, we do not reach the merits of the second or third grounds asserted.
The standard of review applicable in cases involving a denial of a motion to intervene as of right is whether the trial court has acted outside its discretion. See City of Dora v.Beavers, 692 So.2d 808, 810 (Ala. 1997). Typically, persons desiring to intervene in a civil action as of right will claim entitlement to intervention under Rule 24(a)(2), Ala. R. Civ. P., which mandates intervention upon timely application if "the applicant claims an interest relating to the property or transaction which is the subject of the action" and is "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Thus, the Alabama Supreme Court has held that under Rule 24(a)(2), the trial court has discretion to determine "whether the potential intervenor has demonstrated: (1) that its motion is timely; (2) that it has a sufficient interest relating to the property or transaction; (3) that its ability to protect its interest may, as a practical matter, be impaired or impeded; and (4) that its interest is not adequately represented." City of Dora,692 So.2d at 810.
Our research has revealed no Alabama opinion expressly applying the factors set forth in City of Dora in an appeal involving a denial of a motion to intervene undersubsection (a)(1) of Rule 24. Under that subsection, if a timely application to intervene in an action is made, a person "shall be permitted to intervene . . . when a statute confers an unconditional right to intervene." In Ruiz v.Estelle, 161 F.3d 814 (5th Cir. 1998), the *Page 73 
United States Court of Appeals for the Fifth Circuit correctly noted, in construing the analogous federal intervention rule (Rule 24(a)(1), Fed.R.Civ.P.), that intervention based upon statutory authority is "`absolute and unconditional.'" 161 F.3d at 828 (quoting Brotherhood ofR.R. Trainmen v. Baltimore Ohio R.R. Co.,331 U.S. 519, 531, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)). Thus, "`statutory intervenors' need not show inadequacy of representation or that their interests may be impaired if not allowed to intervene," and "need not even prove a `sufficient' interest relating to the subject matter of the controversy, since [the legislative body] has already declared that interest sufficient by granting the statutory right to intervene."Ruiz, 161 F.3d at 828. In other words, "`[o]nce it is clear that [the statute applies], there is no room for the operation of a court's discretion.'" Id. (quotingBrotherhood of R.R. Trainmen, 331 U.S. at 531,67 S.Ct. 1387). Thus, the only factor set forth in City ofDora that can properly be said to be "discretionary" with respect to a trial court's ruling on a motion to intervene when a statute affords an unconditional right to intervene is whether the motion to intervene has timely been filed.Accord Ruiz, 161 F.3d at 827 (abuse-of-discretion standard applies to denials of intervention as of right if based on a finding of untimeliness).
The question of the timeliness of Riverkeeper's motion to intervene, which EWCSA's memorandum in opposition did not raise, need not detain this court: that motion, filed just after service of the original complaint was perfected upon EWCSA and before EWCSA had even filed an answer, was clearly timely, especially given the Alabama Supreme Court's acknowledgment that the "timely application" requirement of Rule 24 is "`"not intended to punish an intervenor for not acting more promptly but rather was designed to insure thatthe original parties should not be prejudiced by the intervener's failure to apply sooner."'" Randolph County v.Thompson, 502 So.2d 357, 365 (Ala. 1987) (emphasis added; quoting McDonald v. E.J. Lavino Co., 430 F.2d 1065,1074 (5th Cir. 1970), which in turn quotes Note, TheRequirement of Timeliness Under Rule 24 of the Federal Rules ofCivil Procedure, 37 Va. L.Rev. 863, 867 (1951)). Neither ADEM nor EWCSA asserted in the trial court the existence of prejudice arising from any delay on the part of Riverkeeper in seeking to intervene. Moreover, Riverkeeper's motion and proposed complaint asserted that Riverkeeper had aright to intervene, and "`courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.'" Randolph County, 502 So.2d at 364
(quoting McDonald, 430 F.2d at 1073).
We now confront the central question of the appeal: does § 22-22A-5(18)b., in the words of Rule 24(a)(1), confer upon Riverkeeper "an unconditional right to intervene"? Our attention must turn to the language of § 22-22A-5(18)b., a provision that is principally concerned with authorizing ADEM to "[c]ommence a civil action . . . to recover a civil penalty from such person for any violation of," among other things, "any condition of any permit . . . issued by [ADEM]" and "any provision of law" whose administration is committed to ADEM in § 22-22A-50), Ala. Code 1975. Among the laws listed in that subsection is "Chapter 22 of [Title 22]," a reference to the Alabama Water Pollution Control Act, Ala. Code 1975, § 22-22-1 et seq. ("AWPCA").
Because we have not previously had the opportunity to consider the meaning of the intervention provision contained in § 22-22A-5(18)b., *Page 74 
a brief review of the pertinent statutory history of the AEMA (of which § 22-22A-5(18)b. is a part) and its relationship to the AWPCA would appear to be warranted. Before 1982, enforcement authority in Alabama as to state laws addressing water pollution, including the AWPCA, was vested in the Alabama Water Improvement Commission. However, under Act No. 82-612, § 4(f), Ala. Acts 1982 (now codified as § 22-22A-4(f), Ala. Code 1975), the water-pollution law-enforcement functions of the Water Improvement Commission were transferred to ADEM, a result that was consistent with the legislature's intent to "effect the grouping of state agencies which have primary responsibility for administering environmental legislation into one department." Ala. Code 1975, § 22-22A-2(1). Notably, ADEM succeeded to the preexisting power of the Water Improvement Commission under the AWPCA to commence civil actions in the circuit courts to recover penalties for violations of the AWPCA or of water-discharge permits issued under the AWPCA, a power that was then codified at Ala. Code 1975, § 22-22-9(o). However, § 22-22-9(o) at that time also provided for a sweeping intervention power, stating that "any person may intervene as a matter of right" in any action to recover such penalties.
In Act No. 86-542, § 4, 1986 Ala. Acts, the legislature amended § 22-22-9 so as to delete the provisions relating to civil actions to recover penalties for violations of the AWPCA or of water-discharge permits and the provision for intervention as of right by "any person." Although § 1 of that act also amended the AEMA so as to, in effect, reconfer the authority to initiate civil-enforcement actions that ADEM had previously had under the AWPCA, the act also narrowed the class of potential interveners in such actions by replacing the "any person" standard of former § 22-22-9(o) with a new "[a]ny person having an interest which is or may be adversely affected" standard. Act No. 86-542, § 1, Ala. Acts 1986 (now codified in pertinent part as Ala. Code 1975, § 22-22A-6(18)b.).
Although the standard set forth in § 22-22A-5(18)b., which confers only upon those persons having an interest that "is or may be adversely affected" standing to intervene in an ADEM civil-enforcement action, apparently was new to Alabama's environmental laws in 1986, that standard was not by any means novel. The federal Clean Water Act, which was first enacted by Congress in 1972 and which had been in effect for 14 years at the time of the legislature's enactment of Act No. 86-542, provides that any "citizen," subject to certain limitations, can commence a civil action against any person "who is alleged to be in violation of . . . an effluent standard or limitation" under that act. 33 U.S.C. § 1365(a). Moreover, if the administrator of the federal Environmental Protection Agency commences a civil-enforcement action under the Clean Water Act in a federal district court, "any citizen may intervene as a matter of right." 33 U.S.C. § 1365(b)(1)(B). Notably, "citizen" is defined in the Clean Water Act as being a "person or persons having an interest which is or may be adverselyaffected." 33 U.S.C. § 1365(g) (emphasis added). Thus, we are not wholly without recourse to persuasive authority in ascertaining the meaning of § 22-22A-5(18)b.; as we noted in Rice v. Alabama Surface Mining Commission,555 So.2d 1079, 1081 (Ala.Civ.App. 1989), "[t]his court has often stated that federal case law construing federal statutes upon which Alabama statutes were patterned will be given great weight as persuasive authority in determining construction of a state statute." Accord Avery Freight Lines, Inc. v. AlabamaPub. *Page 75 Serv. Comm'n, 267 Ala. 646, 651, 104 So.2d 705,709 (1958).
Federal cases considering the scope of 33 U.S.C. § 1365
have broadly interpreted its provisions so as to authorize a wide variety of plaintiffs to bring actions to enforce federal clean-water statutes and regulations. In Middlesex CountySewerage Authority v. National Sea Clammers Ass'n,453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the United States Supreme Court, after considering the legislative history of the phrase "person or persons having an interest which is or may be adversely affected," determined that Congress had intended "to allow suits by all persons possessing standing under this Court's decision in Sierra Club v. Morton,405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)," which would necessarily include plaintiffs who might claim noneconomic injuries. 453 U.S. at 16, 101 S.Ct. 2615. Such a grant of standing "reaches the outer limits of Article III," § 2, of the United States Constitution, which pertains to the subject-matter jurisdiction of federal courts over cases or controversies. Friends of the Earth, Inc. v. Gaston CopperRecycling Corp., 204 F.3d 149, 155 (4th Cir. 2000) (en banc).
In Sierra Club, the United States Supreme Court held that an environmental organization did not have standing to seek declaratory and injunctive relief based upon allegations that certain aspects of a proposed development in a national park were barred by federal laws and regulations governing the preservation of such national parks in the absence of an allegation that that organization's members "would be affected in any of their activities or pastimes." 405 U.S. at 735,92 S.Ct. 1361. In reaching that holding, however, the Court noted that the injury alleged by the environmental organization would be "incurred entirely by reason of the change in the uses to which [the park] will be put, and the attendant change in the aesthetics and ecology of the area," stating that it had been alleged that the proposed development "`would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park and would impair the enjoyment of the park for future generations.'" 405 U.S. at 734,92 S.Ct. 1361. Notably, the Court did not question that such alleged harm "may amount to an `injury in fact' sufficient to lay the basis for standing," adding that "[a]esthetic and environmental well-being" were "important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process." Id. Finally, the Court noted the prevailing trend toward "broadening the categories of injury that may be alleged in support of standing" to include claimed injuries to "`"aesthetic, conservational, and recreational" as well as economic values.'" 405 U.S. at 738, 92 S.Ct. 1361
(quoting Association of Data Processing Serv. Orgs., Inc.v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827, 25 L.Ed.2d 184
(1970)).
More recently, in Friends of the Earth, Inc. v. LaidlawEnvironmental Services (TOC), Inc., 528 U.S. 167,120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the United States Supreme Court considered the question of an environmental organization's standing in the context of a Clean Water Act action brought under 33 U.S.C. § 1365, the very federal statute that Ala. Code 1975, § 22-22A-5(18)b., parallels. In rejecting an alleged polluter's contention that the environmental organization lacked standing on the basis that none of its members "had sustained or faced the threat of any `injury in fact,'" 528 U.S. at 181, 120 S.Ct. 693, the Court concluded that affidavits and testimony given by members of the environmental *Page 76 
organization in the federal district court adequately documented that the alleged pollutant discharges and the members' "reasonable concerns about the effects of those discharges" had "directly affected those [members'] recreational, aesthetic, and economic interests" underSierra Club. 528 U.S. at 183-84, 120 S.Ct. 693. The Court in Laidlaw further reiterated the principle that an association, such as an environmental organization, may properly sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." 528 U.S. at 181, 120 S.Ct. 693 (citing Hunt v.Washington State Apple Advertising Comm'n, 432 U.S. 333,343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).[2]
In United States v. Metropolitan St. Louis Sewer District(MSD), 883 F.2d 54 (8th Cir. 1989), the United States Court of Appeals for the Eighth Circuit decided an appeal arising from a similar factual and legal background to the case before this court. In St. Louis Sewer, after the United States had brought a civil-enforcement action seeking an injunction and penalties against, among other parties, a local sewer authority that had allegedly discharged pollutants into a river in violation of effluent standards and without a permit, an environmental organization (Missouri Coalition for the Environment) sought to intervene pursuant to33 U.S.C. § 1365(b)(1)(B). After noting that the definition of "citizen" in33 U.S.C. § 1365(g) includes a "person or persons having an interest which is or may be adversely affected," the court stated that the environmental organization had alleged in its motion to intervene and in its proposed pleading that many of the organization's members "visit, cross, and frequently observe the bodies of water identified in the United States' complaint," that "from time to time [the] members use these waters for recreational purposes," and that "these interests are adversely affected by the pollution of these waters."883 F.2d at 56. The court concluded that "[those] allegations [were] sufficient to give the [organization] and its members constitutional standing and to classify them as `citizens' as defined in [33 U.S.C. §] 1365(g)" such that they should have been permitted to intervene as of right under Rule24(a)(1), Fed.R.Civ.P. 883 F.2d at 54 (citing ChesapeakeBay Found, v. American Recovery Co., 769 F.2d 207, 209
(4th Cir. 1985), and Friends of the Earth v. ConsolidatedRail Corp., 768 F.2d 57, 60-61 (2d Cir. 1985)).
We discern from those authorities that in enacting Ala. Code 1975, § 22-22A-5(18)b., the Alabama Legislature intended to predicate the right of a citizen to intervene in an action seeking to enforce the AWPCA upon the existence of an actual or threatened injury to that citizen's aesthetic and recreational interests arising from a claimed violation of the AWPCA or of a permit issued by ADEM pursuant to its statutory authority. Riverkeeper asserted such actual and threatened aesthetic and recreational injuries on behalf of its members in its motion to intervene:
 "Riverkeeper is a non-profit membership corporation that is dedicated to the preservation, protection, and defense of the environment and that actively supports effective enforcement and implementation of environmental laws, including the Federal Water Pollution Control Act (FWPCA) and the Alabama Water *Page 77 
Pollution Control Act (AWPCA), on behalf and for the benefit of its members.
 ". . . Members of Black Warrior Riverkeeper have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, Mulberry Fork and Black Warrior River downstream from [EWCSA's facility] in the past, and they intend to do so in the future. They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in Mulberry Fork and Black Warrior River downstream from the Facility. The quality of these waters directly affects the recreational, aesthetic, and environmental interests of certain members of Riverkeeper. The recreational, aesthetic, and environmental interests of certain of Riverkeeper's members have been, are being, and will be adversely affected by [EWCSA's] continued violation of its permit as alleged in this complaint.
 ". . . Members of Black Warrior Riverkeeper now recreate less on Mulberry Fork and Black Warrior River because of [EWCSA's] illegal discharges. The violations alleged herein have had a detrimental impact on those members' interests because the violations have adversely affected and/or diminished aquatic life in Mulberry Fork and Black Warrior River and have made the waters less suitable for swimming, fishing, wading, walking, observing nature, or relaxing. Said members would recreate more in and around Mulberry Fork and Black Warrior River but for [EWCSA's] illegal discharges of pollution. Said members will recreate more often in or near Mulberry Fork and Black Warrior River once [EWCSA's] illegal discharges cease."
We conclude that Riverkeeper has adequately demonstrated that its members have an interest that "is or may be adversely affected" by EWCSA's alleged unlawful discharges into the Black Warrior River so as to authorize intervention under Ala. Code 1975, § 22-22A-5(18)b., and Rule 24(a)(1), Ala. R. Civ. P. Our interpretation of § 22-22A-5(18)b. is consistent with the Alabama Supreme Court's view, expressed in Ex parteFowl River Protective Ass'n, 572 So.2d 446 (Ala. 1990), that an adverse effect upon "`legal or equitable interests in land'" is not a necessary component of standing in the context of environmental law (and especially Sierra Club) and that "matters of environmental protection and regulation are of great significance to the citizens of Alabama."572 So.2d at 456 n. 2 (rejecting the contrary holding in Save Our Dunesv. Alabama Dep't of Envtl. Mgmt, 834 F.2d 984 (11th Cir. 1987), upon which EWCSA relied in its memorandum in opposition to Riverkeeper's motion to intervene). We hasten to add, however, that our conclusions regarding Riverkeeper's standing are based only upon the record as currently constituted, and the trial court remains under a duty to reexamine, based upon the evidence, its subject-matter jurisdiction to adjudicate Riverkeeper's claims. See
Rule 12(h)(3), Ala. R. Civ. P., and Fowl River,572 So.2d at 456 n. 2 ("subject matter jurisdiction is always pertinent to a court's determination in any case").
The order denying Riverkeeper's motion to intervene in this action is reversed, and the cause is remanded for the entry of an order granting Riverkeeper's motion to intervene.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., recuses himself.
[1] Although Riverkeeper contends that it filed a memorandum of law in response to EWCSA's arguments in July 2006, the record does not contain a copy of that alleged memorandum, nor does any reference to the filing of such a memorandum appear on the trial court's case-action-summary sheet.
[2] Alabama law regarding associational standing is in clear accord. See Bama Budweiser, Inc. v. Anheuser-Busch,Inc., 783 So.2d 792, 795 (Ala. 2000) (quotingHunt). *Page 78