This is an appeal from an order of the Circuit Court of Montgomery County, Alabama denying certain declaratory and injunctive relief sought by the plaintiff, Dr. Ray Evers.
Dr. Evers operates a cancer clinic in Cottonwood, Alabama. The record indicates that Evers employed a cancer treatment technique known as an "herbal tumor removal" system which involved the application of certain salves and the prescription of certain vitamins which were designed to stimulate the body's immune system. The treatment also involved the application of a black salve which was designed to burn the patient's skin in an area infected by cancer. The skin was then treated with a yellow salve which was designed to heal the burned skin and cause the cancerous tumor in the patient's body to rise to the skin's surface where it could be removed. Additionally, Evers's herbal tumor removal system required the prescription of vitamins and the administration of enemas containing dimethyl sulfoxide (DMSO), an industrial solvent.
In the latter part of 1984 Mrs. Maxie L. Walker decided to consult the medical authorities about a lump in her right breast. She was advised to undergo surgery and chemotherapy. She did not heed this advice but instead consulted Dr. Evers. Mrs. Walker entered the Evers Clinic in April *Page 652 
1985. During her treatment at the Evers Clinic, Mrs. Walker sustained burns to the right side of her upper torso. Mrs. Walker was admitted to Flowers Hospital the latter part of April 1985 for treatment of these burns. She subsequently died as a result of these injuries.
A complaint was filed with the State Board of Medical Examiners against Dr. Evers. After an investigation the Board filed a complaint with the State Medical Licensure Commission against Dr. Evers.
Before the Commission could hold a hearing to determine the validity of the complaint filed against him, Dr. Evers filed a complaint in the Circuit Court of Montgomery County against the Board, the Commission, and the individual members of each of these organizations. Dr. Evers sought declaratory as well as injunctive relief to prevent the Board from instituting or proceeding with disciplinary actions against him before the Commission.
After a hearing the circuit court denied Evers's request for relief and he appealed to this court.
Evers asserts that the circuit court erred in refusing to enjoin the proceedings commenced against him before the Commission. In brief Evers attacks the constitutionality of three provisions of Alabama's medical licensing and disciplinary procedure. First, Evers asserts that section34-24-54 of the Alabama Code is violative of constitutional due process because of the financial arrangements between the Board and the Commission. Evers also argues that various other provisions create certain conflicts of interest which violate constitutional due process. Second, Evers argues that the appointment powers delegated to the Board by the Alabama Legislature constitute an unconstitutional delegation of legislative authority. Finally, Evers contends that the so-called no-stay provision of section 34-24-367 is unconstitutional.
 I. Procedural Due Process
A. Financial Arrangement between the Board and the Commission
Evers's first contention on appeal is that the close financial relationship between the Board and the Commission constitutes a procedural due process violation. Evers argues in brief that the current arrangement between the two is analogous to the type of conflict which would arise in a situation wherein a prosecutor who practices before a certain tribunal compensates the members of that tribunal.
At this point we note that the Board is the investigative and prosecutorial arm of the state's medical profession.See, §§ 34-24-36, -53, -56, -57, Code 1975. The Commission, on the other hand, constitutes the adjudicative arm of the profession, and has the exclusive authority to revoke the licenses of physicians who are guilty of professional misconduct. See, §§ 34-24-310, -311, Code 1975.
In support of his argument that the financial relationship between the Board and the Commission is violative of due process, Evers cites Continental Telephone Co. v. AlabamaPublic Service Commission, 479 So.2d 1195 (Ala. 1985). TheContinental Telephone Co. case, however, can be distinguished from the facts in the present case. Continental Telephone
involved a hearing before the Public Service Commission regarding a proposed rate increase by a public utility. An organization known as the Public Staff for Utility Consumer Protection attempted to intervene and the intervention was granted. After the Public Service Commission granted only part of the rate increase sought by Continental Telephone Company, Continental and the Public Staff appealed.
On appeal Continental argued that its due process rights were violated because the Public Staff was nothing more than a group of Public Service Commission staff members who had been placed "on loan" to the Governor's Office. The Alabama Supreme Court held that Continental's due process rights were violated because the Public Staff was nothing more than an integral part of the Commission's trial staff under a different label. Thus, the potential for prejudice which existed created a due process violation in and of itself.
The relationship between the Board and the Commission in the present case, however, *Page 653 
is much more remote than that of the Public Service Commission and the Public Staff in the Continental case. First, the members of the Board are appointed by the Medical Association of the State of Alabama (hereinafter MASA), while members of the Commission are appointed by the lieutenant governor, the speaker of the house, and the governor. See, §§ 34-24-53, -310, Code 1975. Second, while both organizations are funded by proceeds from the issuance of licenses, these proceeds are deposited into a joint account, and each organization establishes its own budget, keeps its own set of books, and uses the joint account to defray expenses incurred. See, §§34-24-53(b), -54, Code 1975. Finally, the entire amount of compensation received by Board members and Commission members is only $100 per day for days in which they attend official meetings. See, 34-24-54, Code 1975. Thus, the respective members of the Board and the Commission, who are licensed, practicing physicians, are far less financially dependent on their compensation than members of the Public Staff inContinental Telephone. Moreover, the employer-employee relationship that was present in Continental is not present in the instant case.
We recognize that a fair trial before an impartial tribunal or administrative agency is a basic requirement of due process.Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689,36 L.Ed.2d 488 (1973); In re Murchison, 349 U.S. 133, 75 S.Ct. 623,99 L.Ed. 942 (1955). However, it is this court's duty to sustain the constitutionality of legislative enactments involving the State's police power unless those enactments are proven beyond a reasonable doubt to be constitutionally invalid. Crosslin v.City of Muscle Shoals, 436 So.2d 862 (Ala. 1983). We find that Evers has failed to prove that the financial relationship between the Board and the Commission poses any real threat to his due process rights. Thus, we affirm this aspect of the trial court's order.
 B. Conflicts Arising out of the Combination of Prosecutorial and Adjudicative Functions
Evers also asserts that various conflicts of interest exist between Commission members and Board members. Evers says that the fact that the Commission and the Board are housed in the same facilities, as well as the fact that the Board's assistant general counsel serves as the Commission's general counsel, gives rise to a conflict which is violative of due process.
As previously stated, the record reveals that the general counsel for the Board serves as the prosecutor for the Board before the Commission and the assistant general counsel for the Board serves as hearing officer for the Commission. The Commission's hearing officer, however, is neither empowered nor authorized to vote in license revocation cases, and the seven members of the Commission, all of whom are physicians, bear sole responsibility for determining whether a physician's license should be revoked. See, § 34-24-311, Code 1975.
Evers also argues, however, that potential due process violations exist because of conflicts of interest which exist between the Board's general counsel, Wendell Morgan, and the Board's assistant general counsel, Mark McDonald. As previously stated, the Board's general counsel serves as the legal advisor to the Board as well as the prosecutor in license revocation cases before the Commission. Additionally, the Board's assistant general counsel, Mark McDonald, serves as the legal advisor to the Commission as well as the hearing officer in matters before the Commission.
Our review of the record, as well as case law in other jurisdictions, however, indicates that no unconstitutional conflict of interest exists in the present case. The evidence reveals that while Mr. McDonald and Mr. Morgan share many common duties in their respective capacities Mr. McDonald is an employee of the Commission and answers directly to the chairman of the Commission, Dr. Leon Hamrick. Conversely, Mr. Morgan, the Board's general counsel, answers to the Board of Medical Examiners and MASA. The evidence also reveals that before being hired Mr. McDonald was interviewed by Mr. Morgan, the credentials committee of the Board, and the *Page 654 
Commission. Thus, even though Mr. McDonald's duties include his service as the Board's assistant general counsel, he was neither hired directly by the Board nor is he always answerable to the Board. For these reasons, Evers's claim that the financial relationship between Mr. McDonald, Mr. Morgan, the Board, and the Commission creates a conflict of interest violative of due process is not supported by the evidence.
Therefore, based upon our review of the record in the present case, we are unable to say that Evers has offered sufficient proof to overcome the presumption that the Board's general counsel and assistant general counsel, as well as those physicians serving as adjudicators on the Commission, are men of honesty and integrity who are not susceptible to being swayed by potential conflicts which may exist. Withrow v.Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); seealso, Winslow v. Department of Professional OccupationalRegulation, 348 So.2d 352 (Fla.Dist.Ct.App. 1977). Since Evers has failed to prove that his procedural due process rights were violated in this case, we find that the formation and compensation schemes of the Board and the Commission do not offend due process.
 II. Delegation of Appointment Power to MASA
Evers's next contention is that section 34-24-53 constitutes an unconstitutional delegation of legislative authority to a private organization, MASA.
The statute in question provides in pertinent part:
 "The board of censors of the Medical Association of the state of Alabama, as constituted under the laws now in force, or which may hereafter be in force, and under the constitution of said association, as said constitution now exists or may hereafter exist, is constituted the state board of medical examiners and is charged with the duties and clothed with the powers hereinafter prescribed; said board is hereby vested with authority to adopt and promulgate rules and regulations and to do such other acts as may be necessary to carry into effect the duties and powers which accrue to it under laws now in force or which may hereafter be in force;
and a quorum as provided for by the constitution of the Medical Association of the state of Alabama shall be competent to act."
§ 34-24-53(a), Code 1975 (emphasis ours).
As previously stated, Evers argues that section 34-24-53(a) violates Article IV, Section 44 of the Alabama Constitution by delegating appointment power to MASA and by delegating to MASA the power to decide the number of members on the Board as well as what shall constitute a quorum. The Board, on the other hand, argues that the provision is not constitutionally offensive because it is rationally related to a legitimate State purpose and because sufficient legislative safeguards exist.
It is a fundamental rule of constitutional law that the lawmaking authority of the legislature may not be delegated to any other department or agency, either public or private.State v. Vaughan, 30 Ala. App. 201, 4 So.2d 5 (Ala.Ct.App. 1941). Therefore, when certain legislative powers are delegated to administrative or quasi-administrative officials, it is a prerequisite that adequate standards be established by the legislature so that officials to whom the powers are delegated will not legislate but, rather, will carry out the legislative will. See, Commission on Medical Discipline v. Stillman,291 Md. 390, 435 A.2d 747 (1981). In the realm of public health, however, administrative officials are permitted more control, and, thus, less strict legislative guidelines are required.Commission on Medical Discipline v. Stillman, supra.
Article IV, Section 44 of the Alabama Constitution precludes the legislature from delegating its lawmaking authority to MASA; however, this does not mean that the legislature is precluded from delegating any authority to MASA. See, Yieldingv. State, 282 Ala. 292, 167 So. 580 (1936). Indeed, Alabama courts have consistently held that the legislative delegation of appointment power it could have itself exercised does not constitute an unconstitutional delegation of lawmaking power.Yielding v. State, supra; see also, In re Opinion *Page 655 of the Justices, No. 106, 252 Ala. 559, 42 So.2d 56 (1949);Parke v. Bradley, 204 Ala. 455, 86 So. 28 (1920).
In the present case the legislature created the Board and provided that its membership will be composed of the members of the Board of Censors who, in turn, are selected by the Medical Association of Alabama. Pursuant to its constitutional authority, the legislature could have prescribed a different appointment procedure, for example, authorizing the governor and other governmental officers to name the members of the Board. However, it chose to repose the appointment power in a quasi-administrative body — the Medical Association of Alabama. See, Parke v. Bradley, supra. We find no constitutional impediment to this delegation of appointment power.
Evers also contends that the provisions of section34-24-53(a) amount to an unconstitutional delegation of legislative authority because the statute allows MASA to determine what comprises a quorum for purposes of Board meetings. Evers contends that the delegation of authority to MASA is unconstitutional because the statute allows MASA to regulate future Board membership via its constitution.
As a general rule, the legislature may delegate to its own appointed administrative agencies the authority to make such minor rules and regulations as are necessary or appropriate for administration or enforcement of its general statutes.State v. State Board of Medical Examiners, 209 Ala. 9,95 So. 295 (1923). Section 34-24-53(a) specifically provides that, in addition to regulation by MASA's constitution, the Board shall also be "constituted under the laws now in force, or which may hereafter be in force." § 34-24-53(a), Code 1975. Additionally, the statute in question vests the Board "with authority to adopt and promulgate rules and regulations and to do such other acts as may be necessary to carry into effect the duties and powers which accrue under the laws now in force or which may hereafter be in force." § 34-24-53(a), Code 1975.
A state has broad power to establish and enforce standards of conduct within its borders relative to the health of its citizens. See, Stephens v. Dennis, 293 F. Supp. 589 (N.D.Ala. 1968). In our opinion, the legislature has not exceeded its authority by delegating certain powers to MASA and the Board because the legislature provided sufficient standards in the statute in question by which MASA and the Board must be governed. Admittedly, the statute in question establishes MASA's power to appoint the Board members under present and future laws of the state as well as under MASA's constitution. The statute, however, then empowers the Board to adopt rules which are necessary to carry current and future legislation into effect, and subrogates MASA's authority to that of the legislature by stating that the Board's composition shall be subject to existing as well as future legislation. See, §34-24-53(a), Code 1975.
Because sufficient guidelines are established to serve as benchmarks for MASA's board appointments, that appointment power is not constitutionally offensive. Additionally, because section 34-24-53(a) sets legislative guidelines for the Board to follow, it is also nonviolative of Article IV, Section 44 of the Alabama Constitution.
 III. No-Stay Provision
Section 34-24-367 provides, in pertinent part:
 "Any order of the medical licensure commission suspending or revoking a license to practice medicine or osteopathy shall have immediate effect and shall not be stayed or held in abeyance by any court."
§ 34-24-367, Code 1975.
Evers asserts that the so-called "no-stay provision" of section 34-24-367 violates both the due process clause of the United States Constitution and various similar provisions of the Alabama Constitution.
We note, however, that section 34-24-367 applies only to Commission orders actually revoking or suspending a physician's license. The controversy in the present case merely involves Evers's attempt to obtain declaratory and injunctive relief to prevent the Commission from ever hearing the Board's complaint against him. *Page 656 
As a general rule, injunctive and declaratory remedies, such as those sought in the present case, lie within the discretion of the judiciary. Moreover, the courts are reluctant to allow such relief against administrative determinations unless those remedies arise in a context ripe for judicial determination.See, Abbott Laboratories v. Gardner, 387 U.S. 136,87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
The statute, as well as the facts in the present case, reveals that Evers's ability to obtain injunctive relief was not yet infringed upon by section 34-24-367. Furthermore, section 34-24-367 does not apply until the Commission has actually issued an order denying or revoking a physician's license. Thus, Evers's constitutional challenge of the no-stay provision is not ripe for adjudication at this time. Should the Commission actually issue such an order revoking or suspending Evers's license to practice medicine, this issue will then be ripe for determination pending Evers's appeal from the circuit court.
We, therefore, refuse to address the issue of Evers's constitutional challenge to the no-stay provision in question.
 IV. Conclusion
The briefs and record before us indicate that the relationship between the Board and the Commission is not so inseparable as to violate due process. Additionally, the statutory provisions in question do not constitute an unconstitutional delegation of authority under Article IV, Section 44 of the Alabama Constitution. Finally, Evers's constitutional attack on the no-stay provision of section34-24-367 is not yet ripe for adjudication, and, therefore, we refuse to address it at this time.
For the foregoing reasons, we affirm the circuit court's judgment denying the declaratory and injunctive relief sought by Evers.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.