13 So.3d 397 (2008)
Ex parte MEDICAL LICENSURE COMMISSION OF ALABAMA.
In re David G. Morrison, M.D.
v.
Jerry N. Gurley, M.D., in his official capacity as Chairman of the Medical Licensure Commission of Alabama.
2070245.
Court of Civil Appeals of Alabama.
May 9, 2008.
*400 Troy King, atty. gen., and Benjamin H. Albritton, asst. atty. gen., for petitioner Medical Licensure Commission of Alabama.
Frank M. Wilson, Montgomery; and James S. Ward of Ward & Wilson, LLC, Birmingham, for respondent David G. Morrison, M.D.
Donald R. Jones, Jr., Montgomery, for respondents/intervenors Carmen McInroy, Sandra Horn, Sonja Taylor, Scott Gulley, Richard A. Fitzgerald, and Marie Hoffman.

On Application for Rehearing
THOMAS, Judge.
The opinion of this court issued on March 21, 2008, is withdrawn, and the following opinion is substituted therefor.
In 2005 and 2006, the Alabama Board of Medical Examiners filed administrative complaints with the Medical Licensure Commission of Alabama ("the Commission") against Dr. David G. Morrison, a hematologist-oncologist, charging Dr. Morrison with practicing medicine in such a manner as to endanger the health of patients, in violation of § 34-24-360(3), Ala. Code 1975; using untruthful, deceptive, or improbable statements concerning the effects or results of proposed treatment, in violation of § 34-24-360(7), Ala.Code 1975; gross malpractice, repeated malpractice, or gross negligence in the practice of medicine, in violation of § 34-24-360(9), Ala. Code 1975; performing unnecessary medical services, in violation of § 34-24-360(11), Ala.Code 1975; and being unable to practice medicine with reasonable skill and safety to patients by reason of a demonstrated lack of basic knowledge or clinical competency, in violation of § 34-24-360(20), Ala.Code 1975.
On October 24, 2007, following 8 days of hearings over a 2-month period, the Commission issued a 93-page order containing detailed findings of fact and conclusions of law. The Commission determined that Dr. Morrison was guilty of all charges, revoked his license to practice medicine, and assessed an administrative fine of $266,0000 against him.
On October 29, 2007, Dr. Morrison appealed to the Montgomery Circuit Court and moved that court to stay the revocation of his license during the pendency of the appeal. On November 19, 2007, the circuit court conducted an evidentiary hearing on the motion for a stay. On *401 November 27, 2007, the circuit court issued a stay of the order revoking Dr. Morrison's license.
On December 20, 2007, the Commission petitioned this court to issue a writ of mandamus directing the circuit court to vacate its stay order. The Commission argues that it is entitled to mandamus relief because, it says, Dr. Morrison did not establish any of the grounds set out in the applicable statute governing the stay of an order revoking a medical license.
Judicial review of final decisions by the Commission is governed generally by § 41-22-20, Ala.Code 1975, a part of the Alabama Administrative Procedure Act ("AAPA"). See § 34-24-367, Ala.Code 1975. With respect to the revocation of a license, § 41-22-20(c) provides:
"The filing of the notice of appeal ... does not itself stay enforcement of the agency decision. If the agency decision has the effect of suspending or revoking a license, a stay or supersedeas shall be granted as a matter of right upon such conditions as are reasonable, unless the reviewing court, upon petition of the agency, determines that a stay or supersedeas would constitute a probable danger to the public health, safety, or welfare."
(Emphasis added.) Pursuant to § 41-22-20(c), there is an implied presumption that staying a license revocation will not jeopardize the public health, safety, or welfare. If the agency seeks to prevent the issuance of a stay, it must rebut that presumption by establishing that a stay would "constitute a probable danger to the public health, safety, or welfare."
The Alabama legislature has provided that when the Commission revokes a physician's license to practice medicine, however, a different presumption arises. Section 34-24-367 states that the Commission's revocation of a license to practice medicine creates a presumption that the physician's continued practice would create an immediate danger to the public health, safety, and welfare. Section 34-24-367 provides, in pertinent part:
"Judicial review of the orders and decisions of the Medical Licensure Commission shall be governed by the provisions of Section 41-22-20 (the Alabama Administrative Procedure Act); provided however, that the following procedures shall take precedence over the provisions of Section 41-22-20(c) relating to the issuance of a stay of any order of the licensure commission suspending or revoking a license to practice medicine. The suspension or revocation of a license to practice medicine shall be given immediate effect, it being the expressly stated legislative purpose and intent that the imposition of the penalty of suspension or revocation of a license to practice medicine shall create a presumption that the continuation in practice of the physician constitutes an immediate danger to the public health, safety and welfare."
Section 34-24-367 further provides:
"No stay or supersedeas shall be granted pending judicial review of a decision by the licensure commission to suspend or revoke a license to practice medicine unless a reviewing court, upon proof by the party seeking judicial review, finds in writing that the action of the licensure commission was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion."
At the outset of the evidentiary hearing on Dr. Morrison's motion to stay the Commission's order, Dr. Morrison's counsel informed the circuit court that he intended to present the testimony of several physicians who had referred patients to Dr. Morrison, who thought that those patients *402 had received excellent care from Dr. Morrison, and who believed that allowing Dr. Morrison to practice medicine during the pendency of his appeal would not present a danger to the public health, safety, and welfare. The Commission's counsel responded:
"Under the law there is a presumption that a doctor is dangerous to the public safety, health, and welfare once a revocation is entered. The only way that they can get ... a[] ... stay  and the law is very clear, it says, `No stay shall be granted unless a review[ing] court, upon proof [by] the party seeking judicial review, finds in writing that the action of the Licensure Commission was taken without statutory authority, was arbitrary and capricious, or constitutes a gross abuse of discretion.'
"Whether or not he's a danger to the public is already decided. They can't bring in witnesses to say he's not a danger. That's our position. We're going to object to any witness that would testify to anything other than whether the Commission's order was taken without statutory authority, was arbitrary or capricious, or constitutes a gross abuse of discretion."
In reply, Dr. Morrison's counsel stated: "We have challenged the constitutionality of [§ 34-24-367] because the criteria ... the legislature is requiring [for granting a stay] is exactly the same criteria ... require[d] [for reversal of the revocation] on final [judicial] review." The following exchange then occurred:
"MR. WARD [counsel for Dr. Morrison]:... [I]t's impossible for us today  you don't even have the record before you yet. You haven't  that hasn't been filed with you yet. It is a couple thousand pages long. And in order for you to decide whether something is arbitrary or capricious, it's going to require a review of the whole record.
"So in essence, what it means is Dr. Morrison doesn't have a right [to a stay] in this court, according to the statute, because we cannot show today what we need to show.
"THE COURT: Well, Mr. Albritton [counsel for the Commission], if the record is not available, how in the world am I going to review and determine whether or not the ... decision is arbitrary and capricious?
"MR. ALBRITTON: Well, [Dr. Morrison] can put on evidence of arbitrar[iness] and capriciousness.
"THE COURT: I don't have the record to review whether or not the ruling is arbitrary and capricious.
"MR. ALBRITTON: You do have the ruling itself, Your Honor.
"THE COURT: But I don't have what was presented [to the Commission]."
Over the objection of the Commission, the circuit court allowed Dr. Morrison to present nine witnesses whose testimony indicated that allowing Dr. Morrison to practice medicine during the pendency of the appeal would not endanger the public health, safety, or welfare and, furthermore, that not allowing him to practice during the pendency of the appeal would detrimentally affect the health, safety, and welfare of his patients. Seven physicians, who had either referred patients to Dr. Morrison or stated that they were otherwise acquainted with the level of Dr. Morrison's medical competency, testified. One of Dr. Morrison's patients testified. The regional director of the Montgomery and Prattville clinics for the Southeast Cancer Network testified. That witness stated that Dr. Morrison had 320 active cancer patients and that he was scheduled to see 600 to 700 patients in the next 2 weeks. *403 The Commission presented the 93-page order revoking Dr. Morrison's license and called no witnesses.
The circuit court's November 27, 2007, order granting the stay states, in pertinent part:
"After careful consideration of th[e] evidence, and after review of the written materials, the Court finds as follows:
"1. It is undisputed that as of the time this matter was called for hearing, the transcript, evidentiary materials, and remainder of the record before the Medical Licensure Commission had not been filed with the Court. The parties have indicated that the record of testimony exceeds 2,100 pages and that there are more than 2,000 pages of exhibits. The parties filed briefs to the Administrative Law Judge of more than 200 pages and the Order itself which is presented to this Court for review exceeds 90 pages. In this circumstance, the Court has grave concern that the statutory scheme provides no meaningful opportunity for review and as a result does not afford Dr. Morrison due process of law.
"2. The Court heard the testimony of a number of local physicians who presented evidence, undisputed by the Commission, that Dr. Morrison has the skill, training, and experience to practice medicine safely. These physicians have had extensive opportunity to evaluate Dr. Morrison's competence and skill and regularly referred patients to him for care, including members of their own families.
"3. Undisputed evidence shows that giving immediate effect to the revocation of Dr. Morrison's license would adversely affect the more than 300 patients whose care he is currently managing and particularly those who are under active treatment.
". . . .
"6. In light of the undisputed testimony, any presumption that Dr. Morrison's continuation in practice constitutes an immediate danger to the public health, safety, and welfare has been rebutted. To the extent the Commission's Orders immediately prevent Dr. Morrison from continuing to practice medicine those Orders are arbitrary and capricious and unsupported by the evidence.
"7. At this point in the proceedings, the Court is unable to determine whether other aspects of the Commission's procedures, findings and orders are arbitrary and capricious.
"8. The Court determines that Dr. Morrison has met his burden and that it is in the best interest of the public, and specifically the patients whose care he is currently managing, that he continue in practice during the pendency of this appeal. To rule otherwise, would both damage those patients and deprive Dr. Morrison of any meaningful opportunity for review of the Commission's decision.
"9. The Court gave the Board [of Medical Examiners] and Commission an opportunity to present evidence to support their position. Those parties chose not to call any witnesses or present any evidence but to rely solely on the wording of the statute. Their position appears to be that regardless of the evidence this Court is without power to grant any stay. That could not be the law.
"10. The only evidence before this Court is that Dr. Morrison is a skilled, competent physician whose patients need his care. Therefore, based on the only evidence before this Court the `rocks will cry out' in protest if a stay is not granted."
*404 The Commission argues that the circuit court erred by applying the wrong standard in issuing the stay. As counsel for the Commission pointed out to the circuit court, the statutory standard for issuing a stay of a medical-license revocation is not whether the physician's continued practice would endanger the public health, safety, or welfare, but whether "a reviewing court, upon proof by the party seeking judicial review, finds in writing that the action of the licensure commission was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion." § 34-24-367.
Dr. Morrison first argues that the circuit court applied the correct standard in issuing the stay. He asserts that § 34-24-367 should be interpreted to mean that a review to determine whether a revocation order should be stayed pending appeal must be different from a review to determine whether a revocation order should ultimately be affirmed or reversed on appeal. In support of that argument, Dr. Morrison points out that § 34-24-367 states the legislature's express purpose and intent that "the imposition of the penalty of suspension or revocation of a license to practice medicine shall create a presumption that the continuation in practice of the physician constitutes an immediate danger to the public health, safety and welfare." (Emphasis added.) He claims that his burden on a motion to stay the revocation order was simply to rebut that presumption by proving that he is not an immediate danger to the public health, safety, or welfare.
Dr. Morrison's argument might be persuasive if § 34-24-367 did not contain the following additional language:
"No stay or supersedeas shall be granted pending judicial review of a decision by the licensure commission to suspend or revoke a license to practice medicine unless a reviewing court, upon proof by the party seeking judicial review, finds in writing that the action of the licensure commission was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion."
(Emphasis added.) Clearly, § 34-24-367 requires something more than a rebuttal of the presumption that a physician whose medical license has been revoked is a danger to the public health, safety, or welfare. The statute requires that the party seeking a stay establish that the Commission's action "was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion."
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)
Dr. Morrison presented no evidence indicating that the Commission's action "was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion," and the circuit court's only finding ostensibly addressed to those grounds  "[t]o the extent the Commission's Orders immediately prevent Dr. Morrison from continuing to practice medicine those Orders are arbitrary and capricious and unsupported by the evidence" *405  is, itself, unsupported by any evidence.
Dr. Morrison argues in the alternative that adopting the Commission's interpretation of § 34-24-367 would render the statute unconstitutional because, he says, under that interpretation, the statute would place upon him an impossible burden and deny him due process of law. He argues that, because the record of the administrative revocation proceeding was voluminous and the transcript was not yet available at the time the circuit court heard his motion to stay, he had no way to establish the grounds set out in § 34-24-367. He contends that, without a record of the Commission's proceedings, he was unable to prove the grounds that, the Commission insists, he was required to establish in order to obtain a stay. The record before us indicates that Dr. Morrison served the attorney general with notice, pursuant to § 6-6-227, Ala.Code 1975, of his constitutional challenge to § 34-24-367.
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court observed that "'"[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" 424 U.S. at 334, 96 S.Ct. 893 (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). Instead, the Court said, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). "The hallmarks of procedural due process are notice and `the opportunity to be heard "at a meaningful time and in a meaningful manner."'" Alabama Republican Party v. McGinley, 893 So.2d 337, 344 (Ala.2004) (quoting Mathews v. Eldridge, 424 U.S. at 333, 96 S.Ct. 893, quoting in turn Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).
The process that is due depends upon the nature of the proceedings and the interests of the state and the individual. Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). A state has a substantial interest in regulating who is qualified to practice medicine in order to protect the health and safety of the public; a state has "substantially plenary power" to regulate the health-care professions. Barsky v. Board of Regents of the University of the State of New York, 347 U.S. 442, 451, 74 S.Ct. 650, 98 L.Ed. 829 (1954); Waltz v. Herlihy, 682 F.Supp. 501 (S.D.Ala.1988). "`Professional licenses are valuable property rights,'" Jones v. Alabama State Bd. of Pharmacy, 624 So.2d 613, 615 (Ala.Civ.App.1993)(quoting Averi v. Alabama State Bd. of Podiatry, 567 So.2d 343, 344 (Ala.Civ.App.1990)); Katz v. Alabama State Bd. of Med. Exam'rs, 351 So.2d 890 (Ala.1977), and a physician has a significant interest in his license to practice medicine because his livelihood and professional reputation are at stake.
In Alabama, "[o]ne charged with an offense to be tried at an adjudicatory administrative hearing is entitled to procedural due process. Such due process includes adequate notice of the complaint against him and a reasonable opportunity to prepare a defense with assistance of counsel." Parducci v. Payne, 360 So.2d 1023, 1024 (Ala.Civ.App.1978). Section 34-24-361(e), Ala.Code 1975, and Rule 545-X-3-.03, Ala. Admin. Code (Medical Licensure Comm'n), the administrative regulation implementing that statute, set out the procedure for the conduct of a proceeding to suspend or revoke a license to practice medicine. The statute and the rule provide for the following procedural safeguards: the physician must be given *406 written notice of the charges against him, as well as the date, time, and place of the hearing on the charges, § 34-24-361(e)(1) and -(2), Ala.Code 1975, and the physician has the right to be represented by counsel and to call witnesses in his defense at the hearing, § 34-24-361(e)(7), Ala.Code 1975. The Commission's order revoking Dr. Morrison's license indicates, on its face, that Dr. Morrison presented evidence, testified in his own defense, and cross-examined witnesses at the administrative hearing. The Commission's order recites extensive findings of fact and conclusions of law with respect to each charge in the complaint. Section 34-24-367 and the AAPA give Dr. Morrison a right to appeal from the order revoking his license.
The United States Supreme Court has determined that a state is not constitutionally required to provide for a stay of a judgment during appeal. In Louisville & Nashville R.R. v. Stewart, 241 U.S. 261, 263, 36 S.Ct. 586, 60 L.Ed. 989 (1916), Justice Holmes explained that a state is not bound, by reason of providing an appellate process, also "to provide for a suspension of the judgment" during the appeal. See also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 32, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Stevens, J., joined by Marshall, J., concurring in the judgment) (stating that "[t]he proposition that stays of execution are available as a matter of federal constitutional right was rejected long ago"). In addition, the Court has impliedly held that a statute prohibiting the stay of a professional-license suspension pending administrative review does not violate the Due Process Clause of the Fourteenth Amendment so long as the statute assures the licensee a timely postsuspension hearing. See Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (addressing a due-process challenge to a New York statute authorizing summary suspension of a harness-racing trainer's license).
A former version of § 34-24-367, which was amended by Act No. 88-86, § 1, Ala. Acts 1988, contained an outright prohibition against issuing a stay of the Commission's order revoking a medical license. The former version provided, in pertinent part:
"Any order of the medical licensure commission suspending or revoking a license to practice medicine or osteopathy shall have immediate effect and shall not be stayed or held in abeyance by any court. If it is subsequently determined by a court of competent jurisdiction that the commission acted arbitrarily or capriciously or that the commission grossly abused its discretion, then, upon issuance of a peremptory writ or mandamus, the order of the commission shall be vacated. The reviewing court, however, shall not itself hear or accept any further evidence with respect to issues of fact determined by the commission."
(Emphasis added.) The constitutionality of the "`no-stay provision' of [former] section 34-24-367" was challenged in Evers v. Board of Medical Examiners, 516 So.2d 650, 655 (Ala.Civ.App.1987). In that case, a physician sought declaratory and injunctive relief to "prevent the Board from instituting or proceeding with disciplinary actions against him before the Commission." 516 So.2d at 652. This court did not reach the constitutional question because, it held, that issue was not ripe for adjudication.
State statutes like the former version of § 34-24-367, i.e, those containing an outright prohibition of any stay pending judicial review of an administrative order revoking the license of a physician or other health-care provider, have uniformly been *407 upheld against due-process challenges when the grounds for revocation are professional incompetence or misconduct. See, e.g., Damino v. O'Neill, 702 F.Supp. 949 (E.D.N.Y.1987); Pundy v. Department of Prof'l Regulation, 211 Ill.App.3d 475, 570 N.E.2d 458, 155 Ill.Dec. 945 (1991); Blumstein v. Clayton, 139 Ill.App.3d 611, 487 N.E.2d 1176, 94 Ill.Dec. 299 (1985); Commission on Med. Discipline v. Stillman, 291 Md. 390, 435 A.2d 747 (1981); Flynn v. Board of Registration in Optometry, 320 Mass. 29, 67 N.E.2d 846 (1945); and State ex rel. Kassabian v. State Bd. of Med. Exam'rs, 68 Nev. 455, 235 P.2d 327 (1951). See generally Michael A. Rosenhouse, Annotation, Validity and Construction of State Statutory Provision Forbidding Court to Stay, Pending Review, Judgment or Order Revoking or Suspending Professional, Trade, or Occupational License, 42 A.L.R.4th 516 (1985). The decisions finding no due-process violation in statutes prohibiting the stay of an administrative order revoking a medical license have relied upon two factors  that the physician had a full hearing before the appropriate administrative board or commission and that the state's interest in protecting the public health outweighed the physician's interest in pursuing his livelihood.
In Flynn v. Board of Registration in Optometry, supra, an optometrist whose license had been suspended challenged the constitutionality of a Massachusetts statute providing that "`no order shall be made or entered by the court to stay or supersede any suspension, revocation or cancellation'" of a certificate of registration to practice optometry. 320 Mass. at 33, 67 N.E.2d at 849. The Massachusetts court held:
"We cannot say that it is a deprivation of fundamental rights if the right to a stay is withheld during the interval of time between a decision of the board and the entry of a decree of the court in the event a review is sought. We reach this conclusion the more readily because of the many safeguards in the statute ensuring an adequate hearing in the first instance before the board. The Legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden. While ... the right to follow a legitimate calling is both liberty and property and is protected by the Constitution of the United States and that of this Commonwealth, ... this right [is] not absolute and `must yield to the paramount right of government to protect the public health by any rational means.'"
320 Mass. at 34, 67 N.E.2d at 849-50 (quoting Lawrence v. Board of Registration in Med., 239 Mass. 424, 428, 132 N.E. 174, 176 (1921)).
In Damino v. O'Neill, supra, the federal district court for the eastern district of New York held that a state court's refusal to stay the revocation of a psychiatrist's license pending the outcome of his appeal did not deny him due process. The court stated:
"Plaintiff's allegation that the state court's refusal to stay the revocation of his license pending the outcome of the appeal, violates his due process rights is without merit. Plaintiff cites no authority nor has this court found any authority to support this proposition. Plaintiff's property right to practice medicine is not an absolute right. Unquestionably, the state has the power to revoke his license once the due process requirements of notice and opportunity to be heard have been fulfilled. See Superintendent of Massachusetts Correctional *408 Institution v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The state's legitimate and important concern of public health and safety far outweigh any interest of plaintiff to continue his livelihood. Cf. Mitchell v. Association of Bar of City of New York, 40 N.Y.2d 153, 386 N.Y.S.2d 95, 351 N.E.2d 743 (1976)."
702 F.Supp. at 953.
Unlike its predecessor, the current version of § 34-24-367 does not absolutely prohibit a stay of a medical-license revocation order. Instead, the statute places upon the physician seeking a stay the burden of establishing the same grounds he would have to establish in order to win a reversal of the revocation order on appeal  that the revocation of his license was "without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion." In amending the former statute, the legislature evidently concluded that, in order to protect the public health, safety, and welfare, it was not necessary to prohibit all stays but, instead, to make the standard for obtaining a stay so stringent that only the most egregiously erroneous revocation orders  i.e., those that would ultimately be reversed on appeal  could be stayed pending appeal. In essence, the current version of § 34-24-367 sets out a "prevail-on-the-merits" standard for obtaining a stay. Compare Medical Bd. of California v. Superior Court of Sacramento County, 227 Cal.App.3d 1458, 1461, 278 Cal.Rptr. 247, 248 (1991) (holding that a court may stay an administrative revocation of a physician's license pending appeal if it finds that the administrative agency is "`unlikely to prevail ... on the merits'" of the appeal), and Adam v. Osborn, 15 Conn.Supp. 419, 420 (1948) (holding that whether a supersedeas staying a medical-license revocation should be ordered depended upon whether the appeal "prima facie appears to have enough merit to indicate a reasonable prospect of success" on appeal).
The stay requirements set out in the current version of § 34-24-367 are analogous to the proof requirements for obtaining a permanent injunction. In TFT, Inc. v. Warning Systems, Inc., 751 So.2d 1238, 1242 (Ala.1999), the Alabama Supreme Court explained the different proof requirements for preliminary and permanent injunctions:
"To be entitled to a permanent injunction, a plaintiff must demonstrate success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury to the plaintiff outweighs the harm the injunction may cause the defendant, and that granting the injunction will not disserve the public interest. Clark Constr. Co. v. Pena, 930 F.Supp. 1470 (M.D.Ala. 1996). The elements required for a preliminary injunction and the elements required for a permanent injunction are substantially similar, except that the movant must prevail on the merits in order to obtain a permanent injunction, while the movant need only show a likelihood of success on the merits in order to obtain a preliminary injunction. Pryor v. Reno, 998 F.Supp. 1317 (M.D.Ala.1998). The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits can finally determine the contest. [University of Texas v.] Camenisch, 451 U.S. [390] at 395, 101 S.Ct. 1830 [(1981)]."
It is reasonable to conclude that our legislature adopted an analog of the more exacting permanent-injunction proof requirements ("success on the merits")  rather than the less exacting preliminary-injunction proof requirements ("a likelihood of success on the merits")  as the standard in § 34-24-367 for two reasons. First, as *409 § 34-24-367 implies, there is a presumption that, after the Commission has issued a license-revocation order, the public interest will be disserved by the physician's continuing to practice medicine. Second, at the time when a physician moves for a stay of the Commission's order revoking his license, a "full trial on the merits" has already been held and there is no reason for requiring a less exacting measure of proof than "success on the merits" of an appeal.
We cannot agree with Dr. Morrison that the absence of a transcript of the revocation hearing made it "impossible" for him to obtain a stay. When the legislature amended the former version of § 34-24-367 to allow a stay upon proof that the Commission's action was without statutory authority, was arbitrary and capricious, or constituted a gross abuse of discretion, it must have known that, in the usual case, any motion for a stay would be made soon after the revocation order was issued. It also must have known that the evidence in a medical-license revocation proceeding is often complex and voluminous and that, at the time a stay is sought, a transcript of the proceeding is usually not available. It can reasonably be assumed, therefore, that the legislature authorized a circuit court to enter a stay of a medical-license revocation order under only very limited circumstances  when, for example, the revocation order indicates on its face the existence of a ground for reversal. Thus, the Commission's order could be stayed if it were evident that the basis for revocation charged in the complaint or proved at the revocation hearing was not a ground set out in § 34-24-360 for revoking a physician's license, or if it appeared that the members of the Commission heard no expert testimony as to the standard of care and relied upon their own knowledge in reaching a decision. Dr. Morrison, for instance, could have established that the Commission's order was arbitrary and capricious or constituted a gross abuse of discretion by showing that no hematology or oncology expert was called to testify at the revocation hearing, but that the Commission members relied, instead, on their own general medical knowledge or upon their expertise in medical specialties other than hematology-oncology.
The standard for obtaining a stay that our legislature has set forth in § 34-24-367 is, no doubt, a stringent one, established with the intent that only the most egregiously erroneous cases would come within its provisions and attended by the expectation that few would be able to satisfy its requirements. The fact that the proof requirements of a statute make obtaining relief under the statute difficult, however, does not constitute a denial of due process if there is a rational basis for the proof requirements. See Mathews v. Eldridge, supra.
In deciding whether the proof requirements satisfy due process, we consider three factors: (1) the nature of the private interest affected by the denial of a stay; (2) the governmental interest to be furthered by denying a stay; and (3) the risk of error in denying a stay. See Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. 893. With regard to the first factor, the loss of Dr. Morrison's right to practice medicine, the interest is substantial and the deprivation is great. The loss is mitigated, however, by the fact that a physician whose license has been revoked may later demonstrate that he is competent to practice and the Commission may issue him a new license "whenever it deems such course safe and just." § 34-24-362, Ala. Code 1975. Moreover, the nature of Dr. Morrison's interest must be balanced against the two additional factors.
*410 The second factor, the governmental interest to be furthered, and the third factor, the risk of error in the determination whether to grant or deny a stay, both weigh heavily in favor of the state. The state has not only a strong interest, but an obligation, to protect the health, safety, and welfare of its citizens. The state's interest is far superior to the right of any individual to practice his profession, especially when incompetency or misconduct in the practice of that profession can threaten life itself. We are convinced that the legislature had in mind the state's obligation to protect the health, safety, and welfare of its citizens when it established the stringent proof requirements for obtaining a stay of an order revoking a medical license.
Just as a statute that flatly prohibits any stay of an order revoking a medical license after a full administrative hearing does not deny due process, a statute like § 34-24-367, that intentionally establishes an extremely stringent standard for issuing a stay does not deny due process. A due-process challenge to either type of statute is evaluated, when neither a suspect class nor a fundamental right is implicated, by using the same "rational basis" test, namely: whether the statutory requirement bears a "`rational relationship to a legitimate state interest.'" See Boles v. Parris, 952 So.2d 364, 367 (Ala.2006) (quoting Campbell v. Williams, 638 So.2d 804, 811 (Ala.1994)). We agree with the federal district court in Damino v. O'Neill that "[t]he state's legitimate and important concern of public health and safety far outweigh any interest of [the physician whose license has been revoked] to continue his livelihood." 702 F.Supp. at 953.
When a trial judge entertains a motion for a stay to preserve the status quo during the pendency of an appeal, he is being asked to balance the equities between the parties, to consider "the relative advantages and disadvantages resulting from the granting or refusing to grant the [stay]." Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281, 284, 239 So.2d 298, 301 (1970). The circuit court has the inherent power to balance the equities and maintain the status quo between the parties. Id. However,
"`"`[b]alancing the equities' when considering whether [a stay] should issue, is lawyers' jargon for choosing between conflicting public interests. When [the legislature] itself has struck the balance, has defined the weight to be given the competing interests, a court of equity is not justified in ignoring that pronouncement under the guise of exercising equitable discretion."'"
Ex parte Mt. Zion Water Auth., 599 So.2d 1113, 1117-18 (Ala.1992) (quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 609-10, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring)). In the present case, the Alabama legislature has struck the balance in favor of protecting the public health by denying the right to a stay in all but the most egregiously erroneous medical-license revocation cases  cases in which the movants can demonstrate that they will prevail on the merits of the appeal. The circuit court had no authority to disregard the requirement that, in order to obtain a stay, Dr. Morrison had to prove that "the action of the licensure commission was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion." § 34-24-367.
"A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; *411 and (4) the properly invoked jurisdiction of the court."
Ex parte McNaughton, 728 So.2d 592, 594 (Ala.1998). The Commission has met the requirements for the relief it seeks. Therefore, this court grants the petition for a writ of mandamus and orders the circuit court to vacate the stay it issued on November 27, 2007.
APPLICATION OVERRULED; OPINION OF MARCH 21, 2008, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN, J., concurs specially.
MOORE, J., dissents, with writing.
BRYAN, Judge, concurring specially.
I concur in the main opinion. I write specially only to make the following observations. Section 34-24-367, Ala.Code 1975, requires that the party seeking a stay of the Commission's action establish that such action "was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion." Typically, a court reviewing an administrative agency's action for error on these grounds would be limited to a review of the record on appeal. See, e.g., § 41-22-20(I), Ala.Code 1975 (stating, with some exceptions, that "[i]n proceedings for judicial review of agency action in a contested case, ... a reviewing court shall not itself hear or accept any further evidence with respect to those issues of fact whose determination was entrusted by law to the agency"); and § 41-22-20(k), Ala.Code 1975 (stating the grounds on which a reviewing court may reverse or modify an agency action). In this case, however, the record on appeal was voluminous and unavailable at the hearing on the motion to stay. Accordingly, in order for there to be a meaningful review on the motion to stay, the circuit court correctly permitted the parties to submit evidence at the hearing on that motion. However, in this case, Dr. Morrison did not submit sufficient evidence to the circuit court to establish that the Commission's order "was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion." § 34-24-367, Ala.Code 1975.
Dr. Morrison could have sought to meet this standard by several methods. As the main opinion states:
"It can reasonably be assumed ... that the legislature authorized a circuit court to enter a stay of a medical-license revocation order under only very limited circumstances  when, for example, the revocation order indicates on its face the existence of a ground for reversal. Thus, the Commission's order could be stayed if it were evident that the basis for revocation charged in the complaint or proved at the revocation hearing was not a ground set out in § 34-24-360 for revoking a physician's license, or if it appeared that the members of the Commission heard no expert testimony as to the standard of care and relied upon their own knowledge in reaching a decision. Dr. Morrison, for instance, could have established that the Commission's order was arbitrary and capricious or constituted a gross abuse of discretion by showing that no hematology or oncology expert was called to testify at the revocation hearing, but that the Commission members relied, instead, on their own general medical knowledge or upon their expertise in medical specialties other than hematology-oncology."
13 So.3d at 409.
Dr. Morrison failed to present evidence demonstrating, by these or other methods, any of the factors established by § 34-24-367 *412 for staying the Commission's order. "Except where judicial review is by trial de novo, the [Commission's] order shall be taken as prima facie just and reasonable." § 41-22-20(k), Ala.Code 1975. Absent a showing that the Commission's order "was taken without statutory authority, was arbitrary or capricious, or constituted a gross abuse of discretion," the Commission's order cannot be stayed. § 34-24-367. Dr. Morrison had the opportunity during the hearing before the circuit court to present such evidence, but he failed to do so. Thus, Dr. Morrison has not demonstrated a due-process violation.
MOORE, Judge, dissenting.
Because I conclude that, as applied to the circumstances of this case, § 34-24-367, Ala.Code 1975, violates Dr. Morrison's right to due process, I respectfully dissent.
In rejecting Dr. Morrison's due-process claims, the main opinion states: "Just as a statute that flatly prohibits any stay of an order revoking a medical license after a full administrative hearing does not deny due process, a statute like § 34-24-367, that intentionally establishes an extremely stringent standard for issuing a stay does not deny due process." 13 So.3d at 410. I believe that argument is erroneous for two reasons.
First, in reaching its conclusion, the main opinion relies on numerous other jurisdictions that have considered the due-process implications of statutes that outright prohibit the stay of any license-revocation order. 13 So.3d at 410-11. However, § 34-24-267 does not totally preclude the stay of an order revoking a medical license; rather, it authorizes a stay if specified conditions are met. Because of the differences in the language used in the statutes, the cases cited in the main opinion do not apply.
Secondly, the United States Supreme Court has previously rejected the rationale used by the main opinion. Justice Brennan, in his special writing in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), recognized that once a state undertakes to provide a right or remedy to a party, even though it is not constitutionally mandated to do so, the state may not infringe on that right or remedy in a manner inconsistent with due process. See Pennzoil, 481 U.S. at 22, 107 S.Ct. 1519 (Brennan, J., joined by Marshall, J., concurring in the judgment) ("Since Texas has created an appeal as of right from the trial court's judgment, it cannot infringe on this right to appeal in a manner inconsistent with due process or equal protection." (citing Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985))).
In Evitts v. Lucey, supra, the United States Supreme Court rejected the argument that, because the Constitution did not require an appeal as of right, the state was immune from challenges to the constitutionality of any procedures applicable to the appellate process that had been voluntarily adopted by the state. The Court stated:
"[P]etitioners argue that because the Commonwealth need not establish a system of appeals as of right in the first instance, it is immune from all constitutional scrutiny when it chooses to have such a system. ...
"In support of [this] argument, petitioners initially rely on McKane v. Durston, 153 U.S. 684 (1894), which held that a State need not provide a system of appellate review as of right at all. ... Petitioners derive from this proposition the much broader principle that `whatever a state does or does not do on appeal  whether or not to have an appeal and if so, how to operate it  is of no due *413 process concern to the Constitution....'...
"The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due process norms. For instance, although a State may choose whether it will institute any given welfare program, it must operate whatever programs it does establish subject to the protections of the Due Process Clause. See Goldberg v. Kelly, 397 U.S. 254, 262 (1970). Similarly, a State has great discretion in setting policies governing parole decisions, but it must nonetheless make those decisions in accord with the Due Process Clause. ... In short, when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution  and, in particular, in accord with the Due Process Clause."
Evitts v. Lucey, 469 U.S. at 400-401, 105 S.Ct. 830 (emphasis added). See also Goldberg v. Kelly, 397 U.S. 254, 261-62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (recognizing that the termination of welfare benefits  benefits made available by statute rather than by constitutional mandate  must be handled in accord with due process; further recognizing that a constitutional challenge to the procedure used in terminating those welfare benefits could not be answered by the argument that public-assistance benefits are a "privilege" rather than a "right").
Thus, the State of Alabama is not immune from all constitutional scrutiny in its application of § 34-24-367 simply because the issuance of a stay pending appeal is not constitutionally mandated. Rather, because the Alabama Legislature elected to make a stay available to physicians whose licenses have been revoked, access to such a stay must be provided in accordance with due process.
As noted by the main opinion, the Alabama Supreme Court has previously recognized that "[t]he hallmarks of procedural due process are notice and `the opportunity to be heard "at a meaningful time and in a meaningful manner."'" Alabama Republican Party v. McGinley, 893 So.2d 337, 344 (Ala.2004) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting in turn Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). However, in this case, Dr. Morrison was not provided an opportunity to be heard "at a meaningful time and in a meaningful manner" as to his request for a stay.
In order to avoid the immediate revocation of his medical license, Dr. Morrison promptly sought a stay of that order. In order to obtain the stay, he had to establish that the Commission's order was either arbitrary or capricious, that it was entered without statutory authority, or that it constituted a gross abuse of discretion. See § 34-24-367, Ala.Code 1975. It is undisputed that the transcript of the Commission's administrative proceeding could not be made immediately available to Dr. Morrison. Without a transcript, the circuit court had no means by which to review the evidence presented to the Commission. Without the opportunity to review the evidence presented to and relied upon by the Commission, the circuit court could not determine whether the Commission's order was arbitrary or capricious, was taken without statutory authority, or amounted to a gross abuse of its discretion. In effect, because of the circumstances, Dr. Morrison had no real opportunity to obtain a stay.[1] Due process is *414 violated when a statute purporting to grant a right or remedy to a party is made subject to impossible conditions. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. at 15-16, 107 S.Ct. 1519 (citing Texas caselaw for the proposition that a "`legislature has no power to make a remedy by due course of law contingent on an impossible condition'" (quoting Nelson v. Krusen, 678 S.W.2d 918, 921 (Tex.1984), which, in turn, discusses Dillingham v. Putnam, 109 Tex. 1, 14 S.W. 303 (1890) (recognizing that a legislative act that made the right of appeal dependent on the giving of a bond, without reference to the appellant's ability to pay, was unconstitutional because, for those unable to pay, the bond was an impossible condition), and Hanks v. City of Port Arthur, 121 Tex. 202, 48 S.W.2d 944 (1932) (statute purporting to exempt city from liability for injuries caused by street defects unless the claimant provided notice of the defect 24 hours before the injury occurred imposed an unreasonable condition precedent to recovery and was beyond the legislative power))).
Further, contrary to the main opinion, § 34-24-367 does not allow a physician to challenge the presumption created by the Commission's order only when that order reveals on its face the existence of a ground for reversal. If the legislature had intended such a result, it could have said so. Moreover, this court cannot assume that the legislature must have been aware of procedural obstacles inherent in the appellate process that would, in effect, make it impossible for a physician to obtain the very relief the legislature purported to grant in § 34-24-367. Such an assumption compels the illogical conclusion that, by enacting § 34-24-367, the legislature granted physicians a right and, yet, never really intended the physician to have access to that right.
For these reasons, I agree with the circuit court that § 34-24-367 violates Dr. Morrison's due-process rights. I would deny the petition for the requested writ; accordingly, I dissent.
NOTES
[1] I respectfully disagree with Judge Bryan to the extent that he believes the circuit court provided Dr. Morrison a meaningful opportunity to present evidence to support his motion for a stay. Although the circuit court provided Dr. Morrison a venue to present his evidence, the absence of the transcript rendered that opportunity meaningless. Dr. Morrison could only present evidence that his continued practice of medicine did not subject the public to harm, which, as Judge Bryan correctly notes, is insufficient to warrant a stay. Without the transcript, Dr. Morrison could not present the crucial evidence that the Commission's order was arbitrary or capricious, that it was taken without statutory authority, or that it amounted to a gross abuse of discretion and, thus, meet his burden of proof under § 34-24-367. In short, allowing Dr. Morrison to introduce evidence unrelated to the conditions required by § 34-24-367 did not amount to due process.